[No. 2,883.]

## THE PEOPLE OF THE STATE OF CALIFORNIA *v.* WILLIAM WILLIAMS.

CONTINUANCE OF CRIMINAL CASE.—If the person indicted for murder, at the time and just before he killed the deceased, stated that he was about to kill him, and asked others to witness the killing, the absence of a witness who saw the defendant and the deceased have a friendly conversation the day before, is no ground for a continuance, for the fact, if sworn to, would be no defense.

SUMMONING TRIAL JURY.—If no trial jury has been drawn before the term, and a necessity for one arises during the term, the District Court may order a trial jury to be summoned by the Sheriff. It is immaterial whether the cause for this necessity arose before or after the commencement of the term.

ARGUMENT OF COUNSEL, WHEN TO BE MADE.—The counsel for the prisoner is not entitled to make his argument on the case made out by the prosecution when the prosecution closes. The argument is to be made when the evidence is concluded.

HOMICIDE.—If a homicide is committed by means of willful, deliberate, and premeditated killing, it shows an abandoned and malignant heart.

INSTRUCTIONS SHOULD BE BASED ON EVIDENCE.—If there is no evidence on the subject as to which an instruction is asked, it should be refused.

DELIBERATION OF ACCUSED BEFORE KILLING.—When the question of the capacity of the accused to deliberate, at the time of the homicide, is before the jury, the Court may also instruct as to what might amount to such deliberation.

IDEM.—In deliberating, there need be no appreciable time between the intention to kill and the act of killing.

INSANITY PRODUCED BY INTOXICATION.—Insanity produced by intoxication does not destroy responsibility for crime, if the accused, when sane, voluntarily made himself intoxicated.

DRUNKENNESS IN CONNECTION WITH PREMEDITATION.—Drunkenness cannot be given in evidence as an excuse for crime; but when, in a case of homicide, the jury are to pass on the question of premeditation, for the purpose of fixing the degree of the crime, drunkenness may be taken into consideration for the purpose solely of passing on the fact of premeditation, keeping in view the fact that a drunken man may act with premeditation as well as a sober one.

APPEAL from the District Court of the Ninth Judicial District, Siskiyou County.

The indictment was found and certified to the District Court before the commencement of the term at which the accused was tried.

The fifteenth instruction, referred to in the opinion, was as follows:

"It is a well settled rule of law that drunkenness is no excuse for the commission of a crime. Insanity, produced by intoxication, does not destroy responsibility, when the party, when sane and responsible, made himself voluntarily intoxicated; and drunkenness forms no defense whatever to the fact of guilt, for when a crime is committed by a party while in a fit of intoxication, the law will not allow him to avail himself of his own gross vice and misconduct to shelter himself from the legal consequences of such crime. Evidence of drunkenness can only be considered by the jury for the purpose of determining the degree of the crime, and for this purpose it must be received with great caution."

CAL. REPS. XLIII—44

The eighteenth instruction referred to in the opinion was as follows:

"In this case, if the killing was willful (that is, intentional), deliberate, and premeditated, it is murder in the first degree; otherwise, it is murder in the second degree, and in determining the degree, any evidence tending to show the mental status of the defendant is a proper subject for the consideration of the jury. The fact that the defendant was drunk, does not render the act less criminal, and in that sense it is not available as an excuse, but there is nothing in this to exclude it as evidence upon the question as to whether the act was deliberate and premeditated. Presumptively, every killing is murder, but so far as the degree is concerned, no presumption arises from the mere fact of killing, considered separately and apart from the circumstances under which the killing occurred. The question is one of fact, to be determined by the jury from the evidence in the case, and it is not a matter of legal conclusion, and drunkenness, as evidence of a want of premeditation, is not within the rule which excludes it as an excuse. Drunkenness neither excuses the offense nor avoids the punishment which the law inflicts, when the character of the offense is ascertained and determined, but evidence of drunkenness is admissible with reference solely to the question of premeditation.

"In cases of premeditated murder, the fact of drunkenness is immaterial. A man who is drunk may act with premeditation as well as a sober one, and is equally responsible for the consequences of his act. In murder in the first degree, it is necessary to prove the killing was premeditated, which involves, of course, an inquiry into the state of mind under which the party committed it, and in the prosecution of such an inquiry, his condition as drunk or sober is proper to be considered. The weight to be given to it is a matter for the

jury to determine, and it is sufficient for the Court to say to the jury that it should be received with caution, and carefully examined in connection with all the circumstances and evidence in the case. In determining the question of premeditation, you can take into consideration previous threats of the defendant against the deceased, if the evidence satisfies you, beyond a reasonable doubt, there were any such threats made."

The other facts are stated in the opinion.

*E. Steele,* for Appellant.

The true interpretation of section seventeen of the Criminal Practice Act is that the cause for a jury shall arise during the term, and not in a case that has been certified to the Court long anterior to the term.

The practice has always been to allow defendant's counsel to comment on the testimony for the prosecution when the prosecutor closes his case. It was error for the Court to refuse this privilege.

*John L. Love, Attorney General,* for the People.

By the Court, Wallace, C. J.:

The prisoner having been convicted of the crime of murder in the first degree in taking the life of John Todhunter, and adjudged to suffer death, brings this appeal:

1. The first error relied upon is the refusal of the Court to continue the case upon affidavit filed. This affidavit of the prisoner sets forth that he expected to prove by the absent witness, Clay Todhunter, a son of the deceased, that two or three days before the homicide the witness and the deceased visited the house of the prisoner, situated in a secluded place, and there met the prisoner, and that the interview then had between the parties was friendly in its character.

This, it was supposed, would tend to show that if the prisoner entertained any preconceived design of taking the life of the deceased he might have then and there executed it. In view of the case made by the prosecution, however, this evidence was entirely immaterial. It appears that on the day of the homicide, and before its commission, the prisoner announced his purpose to take the life of the deceased. He stated to the witness, Meagher, that Todhunter was in town and that he was going to kill him, and being advised to go home he replied that he would not go home until he had killed Todhunter, and invited the witness to go with him and see him do it. When on his way to the saloon in search of Todhunter, he said in the hearing of Eubanks, another witness: "I will cut his d—d guts out," and stepping into the saloon commenced an assault upon Todhunter with a bowie knife. He had also, on the same day, told the witness, Michilwait, that he was going to kill Todhunter "because he had killed his colt;" and about the same time he invited Dr. Conlan "to come up and see him kill him," and starting toward the saloon looked back at Conlan and said, "Are you coming?" The deceased, who was unarmed, retreated from the assault; the prisoner pursued him out of the saloon and across the street—a considerable distance—and stabbed him to the heart. There is not the slightest contradiction in the evidence in respect to the circumstances of the killing, and the testimony of Clay Todhunter, as to the visit of his father, two or three days before, to the house of the prisoner, could have had no appreciable bearing upon the case, nor would it have tended in the slightest degree to the exculpation of the prisoner.

2. The challenge of the defendant interposed to the panel of trial jurors summoned was properly overruled. No trial jury for the District Court having been drawn and summoned, and it having therefore "become necessary" during the term of the District Court to order a trial jury to be

summoned, the case came precisely within the provisions of section seventeen of the Act of 1863-4 (p. 527), and the order to summon the jury was properly made by the Court. The necessity for this course arose during the term—that is enough; whether this necessity be attributable to a cause existing before or only arising after the commencement of the term is immaterial. The language of the statute is as follows: "Sec. 17. When from any cause it shall become necessary during the term, the Court may order the Sheriff to summon * * * a sufficient number of persons," etc. This is the view announced in *People* v. *Stuart*, 4 Cal. 225, also in *People* v. *Vance*, 21 id. 400.

3. The Court correctly refused to allow the prisoner's counsel to make his argument upon the case made by the prosecution in opening the case of the prisoner. The argument is to be made "when the evidence is concluded." (Crim. Pr. Act, Sec. 362, Sub. 5.)

4. At the instance of the prisoner the Court gave the jury the following instructions: "1st. Murder is the unlawful killing of a human being with malice aforethought, either express or implied. Express malice is that deliberate intention unlawfully to take away the life of a fellow creature which is manifested by external circumstances capable of proof. Implied malice is where no considerable provocation appears, or where all the circumstances of the killing show an abandoned and malignant heart. 2d. All murder which shall be perpetrated by means of poison or lying in wait, torture, or by any other kind of willful, deliberate, and premeditated killing, or which shall be committed in the perpetration or attempt to perpetrate any arson, rape, robbery, or burglary, shall be deemed murder in the first degree. All other kinds of murder shall be deemed murder in the second degree."

Immediately succeeding these instructions there is found in the record a third instruction asked by the prisoner, and

the refusal of which by the Court is relied upon as error. The third instruction thus refused refers to the two preceding instructious given and is as follows: "3d. The above grades of murder are fixed by our statute and malice is an ingredient of both degrees. If you find that the defendant committed the homicide with malice aforethought, but not under circumstances showing an abandoned and malignant heart, and that it is perpetrated by means of poison or lying in wait, torture, or by any other kind of willful, deliberate, and premeditated killing, or in the perpetration or attempt to perpetrate any arson, rape, robbery, or burglary, you will find the defendant guilty of murder in the second degree."

The instruction as thus asked was correctly refused. Its hypothesis is an inherent impossibility. If the jury find that the defendant committed the homicide with malice aforethought, but not under circumstances showing an abandoned and malignant heart, how are they to find that it was perpetrated by means of willful, deliberate, and premeditated killing? How could the jury find that the homicide was effected by means of willful, deliberate, and premeditated killing, and at the same time that the killing was not done under circumstances showing an abandoned and malignant heart? I should be inclined to suspect, from the reading of the proposed instruction, that a clerical error had occurred in the transcript, were it not that the learned Judge of the Court below, in refusing the motion for a new trial, in adverting to this instruction, uses the following language: "The third instruction asked by defendant specifies several kinds of murder, which the statute declares to be murder in the first degree, and asks the Court to charge the jury that they are only murder in the second degree."

5. The ninth instruction asked and refused is as follows: "9th. If, in your judgment, the homicide complained of was voluntary upon a sudden heat of passion, caused by a provocation apparently sufficient to make the passion irresistible,

the offense is but manslaughter—and in considering the provocation you can take into consideration the state of mind of the accused as to intoxication and his capacity to then resist provocation."

It is sufficient to say of this proposed instruction that there is no evidence in the record upon which to predicate it, and as was said here in *People* v. *Roberts*, 6 Cal. 217, and often since then repeated in substance, "instructions in civil and criminal trials should be drawn with some slight reference to the case made by the evidence."

6. The Court, at the instance of the prisoner, having instructed the jury that if they entertained a reasonable doubt whether or not the prisoner was capable of deliberation at the moment of committing the homicide, they must give him the benefit of such doubt, the prisoner thereupon asked the Court to give the following instruction:

"19th. And if you have such reasonable doubt as to the capacity to deliberate—of defendant—at the time the act was committed—he is entitled to an acquittal of the crime of murder in the first degree." The instruction was given; but the Court thereupon added the following:

"In deliberating there need be no appreciable space of time between the intention to kill and the act of killing. They may be as instantaneous as successive thoughts of the mind. It is only necessary that the act of killing be preceded by a concurrence of will, deliberation, and premeditation on the part of the slayer; and if such is the case the killing is murder in the first degree, no matter how rapidly these acts of the mind may succeed each other, or how quickly they may be followed by the act of killing." It is now claimed that there was an error in giving this last instruction in connection with the other.

The question of the capacity of the prisoner to deliberate at the time of the homicide having been, at his instance, placed distinctly before the jury, there was obviously no

error in also instructing them as to what might amount to such deliberation on his part—and in doing so the Court below gave the precise instruction which had been given and was approved here in *People* v. *Nichols*, 34 Cal. 211.

7. The fifteenth instruction given to the jury, as to insanity produced by intoxication, is correct. It is the same which was approved here in *People* v. *Lewis*, 36 Cal. 531.

8. In its eighteenth instruction, as to the effect of the intoxication of the prisoner in connection with determining the degree of the murder, the Court but followed the rule laid down here in the case of *The People* v. *Belencia*, 21 Cal. 544, and subsequently approved in the case of *The People* v. *King*, 27 Cal. 507, and other cases in this Court. In this there was no error.

We discover no error in the action of the Court below in any of the proceedings of the trial. The various legal propositions involved were correctly and distinctly placed before the jury by the learned Judge, in an elaborate charge, remarkable for its clearness and force.

9. The last point made is that the Court erred in denying the motion for a new trial, on the ground that the entire evidence taken together shows that the offense of the prisoner amounted to no more than murder in the second degree. I have carefully read and attentively considered the record in this connection, and am entirely satisfied that upon the case presented no enlightened and conscientious jury could have done otherwise than find a verdict of murder in the first degree.

Judgment and order affirmed.

Mr. Justice CROCKETT did not express an opinion.