[No. 5,909.]

SCOTT *v.* DYER ET AL.

ALCALDE GRANT—MEXICAN LAW.—An alcalde of the pueblo of San Francisco—after the conquest, and before the incorporation of the City of San Francisco, and the adoption of the Constitution of the State—could make a valid grant of pueblo lands, as such officers had been, before the conquest, accustomed to do. *Held,* accordingly, that such a grant, made in the usual form and with the customary formalities, was valid.

ID.—CASES COMMENTED UPON.—*Cohas* v. *Raisin,* 3 Cal. 443; *Dewey* v. *Lambier,* 7 Id. 347; *White* v. *Moses,* 21 Id. 34; and *Broad* v. *Broad,* 40 Id. 496, affirmed; and *Alexander* v. *Roulet,* 13 Wall. 386, distinguished.

ID.—AGREED CASE—STIPULATION.—*Held*—in view of the stipulation in this case, that certain questions only were involved—that other questions could not be considered.

ID.—STREETS—EMINENT DOMAIN.—Such a grant operated to deprive the pueblo and its successor, the City of San Francisco, of the right to open streets through the land granted, except upon compensation paid or secured, and in pursuance of proceedings prosecuted for the purpose.

APPEAL from a judgment for the plaintiff, and from an order denying a new trial, in the Fourth District Court, City and County of San Francisco. MORRISON, C. J.

The complaint, in effect, alleged that the pueblo of San Francisco on the 22nd day of September, 1848—by its alcalde, Leavenworth —made a grant to one Harris, of a lot 100-varas square, known as Lot No. 11 of the Laguna Survey, in the present City and County of San Francisco, and that the title of Harris had vested in the plaintiff; that in 1856, the City and County of San Francisco made an order by which it adopted a plan or map establishing streets in that portion of the then incorporated limits of the city lying west of Larkin and south-west of Johnston Streets; and that by said plan or map, a street called Green Street was lo-

cated and established, which passed through the plaintiff's lot; that in 1877, the city and county passed an order for the grading of said street, and that the contract had been let to certain parties, and by them assigned to the defendant, Dyer, and that the said Dyer threatened to enter upon the plaintiff's lot, and to grade the said street through the same. The allegations of the complaint were, in effect, admitted, except the allegation as to the grant from the city; and, with reference to this, it was admitted that a grant was made by the Alcalde; but it was claimed that this operated as a grant from the city only by virtue of the Act of March 11th, 1858, entitled "An Act to ratify and confirm certain ordinances of the Common Council of said city," and the ordinance therein referred to; and that by the said act and ordinances the grant was made subject to the streets established by the plan or map referred to in the complaint, among which was Green Street.

The case was submitted, in the lower Court, upon the pleadings and the following stipulation:

"Title of Court and Cause.

"Stipulated, that the only points in controversy in said action are the following:

"1st. Whether, after the conquest and acquisition of California by the United States, and before the incorporation of the City of San Francisco, and before the adoption of the Constitution of the State of California, a person exercising the functions of an Alcalde of the Pueblo of San Francisco, otherwise Yerba Buena, could make a valid grant of pueblo lands, as such officers had been, before such conquest, accustomed to do.

"2nd. Whether such grant, if valid, operated to deprive said pueblo, or its successor, the City of San Francisco, of the right to open and lay out necessary streets and highways over such previously granted land, without compensation to the holders of such alcalde grants for the land actually taken for such streets.

"3rd. What was the effect of the Van Ness Ordinance, and the proceedings had thereunder, and the Acts of the Legislature and of Congress confirming them, as to such streets laid out over such lands so granted, and designated as streets on

said Van Ness map? and the following evidence, to wit, Order No. 697 of the Board of Supervisors of said city and county, approved May 4th, 1866—§ 23 of chap. 4 of which order is as follows: ' Sec. 23. All the original streets now laid down upon the official map of this city and county west of Larkin and south-west of Ninth Streets, in accordance with the conditions of the ordinance of the Common Council of said city, approved June 20th, 1855, entitled " An Ordinance for the settlement and quieting of land titles," are hereby declared to be open public streets and highways ' "—which was all the evidence.

*J. M. Wood, W. C. Burnett,* and *John L. Murphy,* for Appellants.

*Sidney Smith & Son,* for Respondent.

Department No. 1, McKINSTRY, J.:

The plaintiff claims title to the lands described in the complaint under a grant of the same made by T. M. Leavenworth, Alcalde of the Pueblo of San Francisco, to one A. C. Harris, on the 22nd day of September, 1848, which was in the usual form of alcalde grants, and made in compliance with the then customary formalities.

The question of the validity of such a grant, and that it conferred the right to the possession upon the grantee, cannot be reconsidered by this Court.

The 7th day of July, 1846, has been recognized by the Courts and by the Congress of the United States, as the date when the authority of the Mexican departmental officials terminated in California. But in *Cohas* v. *Raisin,* (3 Cal.) 448, it was held that a grant, or a town lot, made by an " American Alcalde," in 1847, conveyed a title to the grantee ; and the Supreme Court said : " A grant of a lot in San Francisco, made by an Alcalde, whether a Mexican or of any other nation, raises the presumption that the Alcalde was a properly qualified officer ; that he had authority to make the grant, and that the land was within the boundaries of the pueblo." It was further said, that such grants were not of any portion of the public domain, made

by officers of the conquering power, but were " grants of municipal lands, made by the regularly authorized municipal authorities, under the laws, usages and customs of the country, which were not interfered with by the military or *de facto* government," etc. It is, indeed true, that the particular grant there present, was a grant made before the treaty of peace; but there is nothing in the reasoning of the Court in *Cohas* v. *Raisin*, which would suggest that a different rule could be applied to a grant made after the actual overthrow of the Mexican authority, whether made before or after the treaty was signed and ratified. The Court, in their opinion, add: " The fact that this right (of granting lots) was exercised by the municipality, in its different forms, *from* 1835 to 1850, without question or restriction, would prove the usage and custom in the absence of the law." If it should be admitted, as suggested—and we find it unnecessary to admit it—that the decision in *Cohas* v. *Raisin* would be justified only by reason of the disturbed condition of land titles and threatened breaches of the peace, that very fact should induce us, after this lapse of time, to stand by the judicial solution of the question involved as *res adjudicata.*

· The grant considered in *Dewey* v. *Lambier*, (7 Cal. 347) was made by the officer who executed that under which the present plaintiff deraigns title, and was issued nearly two months *later.* In *Dewey* v. *Lambier*, the Court said: " In the examination of this case we have observed the same line of defense, substantially, as that made in the case of *Cohas* v. *Raisin;* and, lest it might be supposed that there is some disposition on the part of this Court to question that decision, we take this occasion to approbate the same, and to announce our determination of adhering to it."

Passing *Hart* v. *Burnett*, and *Payne* v. *Treadwell*, 15 and 16 Cal.—which recognize the cases previously referred to as authoritative— *White* v. *Moses*, 21 Cal. 34, is directly in point. There the grant had been made in 1849. The case was decided in 1862, long after the " Van Ness Ordinance " had been ratified, and the Court declared: " The law upon this point, whatever may be the opinions of individuals, or the determination of tribunals not governed by our judgments, must be considered settled, so far as it

depends upon the decisions of this Court," and cited *Cohas* v. *Raisin*, *Dewey* v. *Lambier*, *Welsh* v. *Sullivan*, 8 Cal. 179, and *Payne* v. *Dewey*, 16 Cal. 232. As late as 1871 it was said, in *Broad* v. *Broad*, 40 Cal. 496 : " That an Alcalde's grant passed a title to a grantee therein named, is beyond controversy in this Court."

Nor (if it could be so overthrown) was the authority of the cases above cited overthrown by the Supreme Court of the United States, in *Alexander* v. *Roulet*, 13 Wall. 386. The grant there held to be invalid, was of a parcel of the common lands of the *pueblo*, and was made by Horace Hawes, *elected* and acting as *Prefect of a district*, which included the pueblo within its boundaries. The judgment of the Circuit Court of the United States for the District of California, which was affirmed by the Supreme Court, was to the effect, that although each *Prefect* of California, while the same was part of the Mexican territory, had power to make grants of the common and unappropriated lands of the pueblos within their jurisdiction, yet that from and after the conquest and acquisition of the country by the United States they ceased to have such power, and, consequently, the grant of Prefect Hawes was void.

The officers of the Territory of California, (including prefects) empowered by Mexican law to make grants of public lands, could grant lands within the pueblo ; but the powers of such officers to make grants anywhere ceased upon the conquest ; and the power was not transferred to the military officers *de facto*, who immediately succeeded such departmental or territorial officers.

As we have seen, however, it has been determined by the Court, that a grant by an Alcalde was not an ordinary grant of the public domain, but a grant of *municipal* lands, made by a regularly authorized municipal officer, under the laws, usages, and customs of the country, not interfered with by the United States, or the *de facto* government which existed in California subsequent to the conquest and prior to the admission of the State into the Union. To maintain this position, it is not necessary to hold that the title or estate of the municipality was in any wise different from such as it was said to be in *Hart* v. *Burnett, supra*.

Counsel for appellants seem to have misapprehended the effect of their citations from "Dwinelle's Colonial History of San Francisco." Governor Gutierrez, as there quoted, says: "The *Ayuntamiento*, (or Alcalde, see *Hart* v. *Burnett*) may dispose of these lands, (the *ejidos*) for building lots." "The *ejidos* could be alienated only for the purpose of granting *solares* or building lots," etc. (Dwinelle, p. 11.) The question, however, is not involved in the present case, for two reasons: 1st. It does not appear that the lot described in the complaint constituted a portion of the *ejidos ;* 2nd. It is not a question which can be considered here, in view of the *agreed case or stipulation* in the transcript.

The plaintiff being the absolute owner of the lands described in the complaint, they cannot be entered upon without her consent ; nor can any portion of them be appropriated to the use of the public as a street, except upon due compensation paid or secured, and in pursuance of proceedings prosecuted for that purpose.

Judgment and order affirmed.

Ross, J., and McKee, J., concurred.