[No. 11996.   Department Two. — June 13, 1889.]

## N. W. SPAULDING, APPELLANT, v. GEORGE L. BRADLEY, RESPONDENT.

FINDINGS — SUFFICIENCY OF EVIDENCE — REVIEW ON APPEAL. — If the evidence sustains the finding of the court below upon a material issue which is decisive of the case, and this finding and others not objected to support the judgment, it is immaterial whether other findings objected to are sustained by the evidence or not.

ALCALDE GRANT — SUFFICIENCY OF DESCRIPTION — EVIDENCE. — When the description of two lots conveyed by alcalde grants represents them as one-hundred-vara lots numbered 15 and 25 as marked on page 4 of District Record "B," which record shows the location of the premises described in the grants, there is no patent ambiguity in the description; and if there is no evidence tending to discover a latent ambiguity, an objection to the grants as uncertain and ambiguous in the description of the premises conveyed is properly overruled.

ID. — EFFECT OF ALCALDE GRANT — STREET — EMINENT DOMAIN. — A grant of lots made by the alcalde of San Francisco in 1848 passed an absolute title thereto; nor could any portion thereof be appropriated to the use of the public as a street, except upon due compensation paid or secured in pursuance of proceedings prosecuted for that purpose.

DEDICATION OF STREET. — To constitute a dedication of land for a street, there must be a manifestation of the owner's intent to dedicate it to a public use, and an acceptance and use by the public for the purpose intended and manifested by the owner.

ID. — EVIDENCE OF DEDICATION. — A description in an unverified complaint in ejectment of a lot the whole of which is recovered in the action, which represents the lot as commencing near the northeast corner of Union and Polk streets, without anything in the record of the action to identify the starting-point, does not indicate that Polk Street extended across the lot, or was used by the public across it, or prove any intent

LXXIX. CAL.— 29

of the plaintiff in ejectment to dedicate any part of the lot to be used as a public street.

STREET ASSESSMENT — INVALID OPENING OF STREET. — A street assessment levied for the opening of a street across a private lot which had not been dedicated to the public, or condemned for public use, and of which there was no user by the public until after the grading was done for which the assessment in question was levied, is invalid, and cannot be enforced.

DEED — EFFECT OF QUITCLAIM — ESTOPPEL. — A quitclaim deed conveys the absolute fee-simple title, if the party executing it had such title, and does not imply any precedent interest or easement in the releasee, or any admission or estoppel of the releasor to that effect.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order refusing a new trial.

The facts are stated in the opinion.

*William H. H. Hart*, and *J. M. Wood*, for Appellant.

*R. B. Wallace*, for Respondent.

VANCLIEF, C. — This is an action to foreclose a street-assessment lien for $707, upon lot No. 17, southeast corner of Union and Polk streets, San Francisco, for grading Union Street from Larkin Street to the westerly line of Franklin Street by order of the board of supervisors made August 13, 1877. The work of grading was done by J. S. Dyer under contract dated October 4, 1877, and was commenced on or about the ninth day of October following, and completed prior to May 26, 1880; and the assessment therefor was levied on the twenty-seventh day of May, 1880. The plaintiff sued as the assignee of J. S. Dyer.

The trial court gave judgment for the defendant, and the plaintiff appealed from the judgment, and also from an order denying his motion for a new trial made on his bill of exceptions. Counsel for appellant makes no point on the appeal from the judgment, unless he claims by implication that the findings of fact do not support the judgment.

The principal grounds upon which appellant's counsel asked for a reversal and new trial are, that the evidence is insufficient to justify the first, third, and fourth findings of fact by the trial court, which are as follows:—

" 1.  That at all the times between the first day of January, 1850, and the first day of January, 1880, none of that portion of what is now Union Street upon which fronts the premises described in the complaint in this action was a public street, but such portions of what is now Union Street was within the exterior boundaries, and was part and parcel of a valid grant made to a private person by the alcalde of the town of San Francisco prior to 1850, to which title by grant the defendant in this action has succeeded, and was at all times between said first day of January, 1850, and said first day of January, 1880, held in private ownership, and had not been conveyed to the city of San Francisco, or to the city and county of San Francisco, nor dedicated to public use."

" 3.  That the superintendent of public streets, squares, and highways did not recommend to said board that said work be done, and did not make any recommendation in regard thereto.

" 4.  That the board of supervisors of the city and county of San Francisco never had nor acquired jurisdiction to order the said work of grading mentioned in the complaint in this action."

If the first of these findings is justified by the evidence, the third will not be necessary to the support of the judgment, and the fourth is merely a conclusion of law, and as such is repeated in its appropriate place.

In support of the first finding, it appears that defendant put in evidence two grants from Alcalde T. M. Leavenworth,—one to Nelson Taylor of one-hundred-vara lot "numbered 25, on page 4, District Record 'B,' and bounded on the west by lot 15 of said plat," dated December 23, 1848; and the other to Stephen A. Harris, of one-hundred-vara lot numbered 15, "lying and being situated

outside the limits of the town survey and in the western vicinity of San Francisco, on or near a road to the Presidio, and numbered (15) fifteen on the plan referred to in the petition aforesaid," and dated September 25, 1848. To these grants are attached the petitions to the alcalde therefor, and each containing a description of the land applied for, which is referred to in the grant, and thereby connected with the description in the grant. No objection was made to the introduction of these alcalde grants or the petitions thereto attached, or to the form thereof, except that it was objected to each "that the lands purported to be granted are not described with sufficient certainty to identify the same, and that the petition is ambiguous, because it does not designate any specific property." We think the court properly overruled this objection. There is no patent ambiguity in the description, and no evidence tending to discover latent ambiguity. The description is of lots, one hundred varas square, and numbered 15 and 25, as "marked on page 4, District Record 'B.'" The grants refer to this District Record "B" as containing a "plan," or "plat"; and it appears that the book—District Record "B,"—was produced by the recorder of the city and county of San Francisco from his office, and was introduced in evidence in connection with each of the alcalde grants, and that "said book showed the location of the premises described in said grants, and a certificate in due form of the issuance of each grant."

Beside, lot 25 is described as "bounded on the west by lot 15 of said plat," so that the two lots in question adjoin each other; and then lot 15 is described as bounded "on the north by the southern line of boundary of lot granted by George Hyde, and numbered one (1) on page four (4) of District Record; on the west by lot number eleven (11) of the same plan, and south and east by land yet unsurveyed,—said land lying in the western vicinity of San Francisco, and near the road to

the Presidio, and numbered fifteen (15) on the plan referred to in the petition" attached to the grant. Nothing in the evidence tended to show that the things or objects mentioned in these descriptions did not exist, or that they may not be located and identified; or that by them and the plan or plat contained in the book, District Record "B," in the recorder's office, the two lots in question may not be completely identified. Surely it cannot be said, "as matter of law, that on the face of the deed (grant) the description was so vague as not sufficiently to identify the land." (*Thompson* v. *Thompson*, 52 Cal. 157.)

It was admitted by the plaintiff that the premises described in this action, and all that portion of what is now Union Street upon which front the premises described in the complaint in this action, are included in and are a part and parcel of the lands described in and granted by the two alcalde grants heretofore (in the record) set out; and that at the dates of the alcalde grants hereinbefore (in the record) set out, T. M. Leavenworth was the alcalde of San Francisco, and in the actual and unquestioned exercise of his authority as such alcalde. It was admitted that one-hundred-vara lots Nos. 15 and 25, described in said alcalde grants, lie within the limits of the lands confirmed to the city of San Francisco by the final decree of the circuit court of the United States confirming to said city its pueblo lands."

The defendant also proved that on the twenty-third day of December, 1881, he acquired through mesne conveyances all the title granted to Nelson Taylor and Stephen Harris by Alcalde Leavenworth, as aforesaid, in and to said lot No. 25, and all that portion of lot No. 15 lying east of the center line of Polk Street; and further proved that the premises described in the complaint, upon which the assessment was levied, and all that portion of Union Street upon which it fronts, are included

in the land to which the defendant acquired title on the third day of December, 1881, as above stated.

There is no evidence or pretense of a grant or any kind of conveyance by the defendant or his predecessors to the city or city and county of San Francisco of any interest or easement in any part of the land occupied by Union Street; but it is claimed by counsel for appellant that a dedication was proved, and that that part of the first finding to the contrary is not justified by the evidence.

To constitute a dedication, there must have been a manifestation of the owner's intention to dedicate to a public use, and also an acceptance and use by the public for the purpose intended and manifested by the owner. (*Harding* v. *Jasper*, 14 Cal. 647; *San Francisco* v. *Canavan*, 42 Cal. 542; *Quinn* v. *Anderson*, 70 Cal. 454; *Hope* v. *Barnett*, 78 Cal. 9.)

As to the intention to dedicate, there was at least a substantial conflict of evidence, if not a preponderance against it; and that there was no user by the public until after the grading, for which the assessment in question was levied, seems to have been proved. The following is the substance of the principal parts, if not all, of the evidence bearing upon the issue as to dedication:—

A judgment roll and notice of *lis pendens* in case of *H. P. Gallagher* v. *Stivers et al.*, which was an action of ejectment for the recovery of lot No. 15, commenced in April, 1860, were put in evidence by the plaintiff (Gallagher having been one of the mediate grantors of defendant), by which it appeared that the property sued for was described in the complaint and notice of *lis pendens* as "commencing *near* the northeast corner of Union and Polk streets, . . . . being all of Laguna survey, lot No. 15." The complaint was not verified, and the plaintiff recovered judgment for the whole lot 15. This indicated that Gallagher then understood that

there was a street called Union Street near the commencement point of his description.

What was its condition, whether it was used, or was passable for travel or not at that time, does not appear from the description nor from the judgment roll. For aught that appears, a portion of what is now used as Union Street, but not extending to the grading for which the assessment in question was levied, may have been dedicated to and then used by the public to a point (say Larkin Street), which Gallagher considered "near" the starting-point of his description, but which starting-point cannot be identified by anything in the record; but however this may be, we think no intent of Gallagher to dedicate his own land to be used as a public street can be properly inferred from this description alone, and there is no other evidence tending to prove it.

Michael Reese acquired the title to all the land in question, by deed from H. P. Gallagher, dated June 1, 1862, and continued to own the same until December 23, 1881, when his executors conveyed the same to the defendant; and continuously from 1862 to 1878 lot 25, and that part of lot 15 lying east of the center line of Polk Street, were each assessed to him *in solido* and the taxes were paid thereon. On the twenty-eighth day of May, 1880, said executors — Jacob Rosenberg, Charles Lux, and Joseph Rosenberg—remised, released, and quitclaimed to the city and county of San Francisco "all lands reserved under the Van Ness ordinance." It is claimed by counsel that "a part of the land so reserved was that part of Union Street crossing the one-hundred-vara lot involved in part here," but this does not seem to be shown by the record. It will be seen that this quitclaim conveyance was executed after the completion of the work for which the assessment in question was levied. Yet counsel for appellant contends that this form of conveyance implied an admission that the releasee (the city and county) had a precedent estate in the land, and that

such "admission is an estoppel upon, not only the gran-
tors of defendant, but upon the defendant himself, who
took with notice of such admission as evidenced by the
prior record of the quitclaim deed." In all this, we think
counsel is mistaken, as it has been often decided by this
court that a quitclaim deed conveys the absolute fee-
simple title if the party executing it had such title (*Sul-
livan* v. *Davis*, 4 Cal. 292; *Graff* v. *Middleton,* 43 Cal. 344;
*Rego* v. *Van Pelt*, 65 Cal. 255); and therefore such deed
does not imply any precedent interest or easement in
the releasee, or any admission of the releasor to that
effect.

The defendant proved that on October 17, 1879, the
executors of Michael Reese gave to J. S. Dyer, the con-
tractor, written permission to deposit earth upon lot No.
25,—then the property of the Reese estate,—provided
that he should not thereby raise the lot above the official
grade of the adjacent streets, and that he should at all
times keep the surface level, make no charge for making
such deposits of earth, and replace and repair the fences
upon said lot.

In consideration of this license, Dyer then promised
in writing to comply with its conditions, and to discon-
tinue making such deposits whenever requested by the
executors.

C. V. Gillespie, a searcher of records, testified, in sub-
stance, that he had examined upon the records the
deeds constituting defendant's chain of title, from the
alcalde grants until 1884, for the purpose of ascertain-
ing whether or not any of those deeds mentioned or
referred to Union Street, and found that they did not.

J. N. E. Wilson, an attorney of San Francisco, testi-
fied, in substance, that he had resided near that part of
Union Street in question since March, 1858, and knew
the condition of Union Street west of Larkin up to the
time of the grading in 1878, and that there was nothing
like a thoroughfare on it; that there was a little path-

way on the top of the hill, about where Union and Lar-
kin now are, that ran diagonally down Union Street
from Larkin to the northeast corner of Mr. Burr's lot,
but not coincident with Union Street. ,

E. W. Burr testified that he had resided in San Fran-
cisco since November, 1852, and then resided on lot 12
or 13 of the Laguna survey; that the lots 15 and 25 were
fenced as early as 1852; that there were no streets out
there in 1852; that there was no passage-way or street
on the line of what is now Union Street until the grad-
ing was done, and that the fence around lot 25 had
existed more than twenty years when the grading in
suit was commenced. It was admitted by plaintiff that
Michael Reese had a fence across Union Street in 1877.

James M. Taylor testified that he was attorney for
Michael Reese (who died in August, 1878), and had
charge of the land in question from June 1, 1876, until
June 1, 1877; that from written memoranda, made by
himself, he had no doubt that on or about June 29,
1877, he went before the street committee for Mr. Reese
to stop grading Union Street from Larkin to west side
of Franklin; that he knew the premises described in
the complaint, and that they were refenced by Mr. Reese
in 1876,—the refencing including Union Street from
Polk to Larkin; the fence that crossed the street had
no opening to permit passage through in 1876. Mr.
Reese always expressed himself as unwilling to have the
street go through there. During the time he had charge
of the property he did not permit any act tending to
open the street. Mr. Dyer got no permission from him
to remove the fence.

James S. Dyer testified, among other things, that he
was the contractor, and did the grading in question;
commenced the work four or five days after signing the
contract, and was engaged in the grading about three
years; no objections were made to the grading, to his
knowledge; when he came to the fence across Union

Street, he went to see Mr. Reese, in the latter part of 1878, but did not meet him; saw his clerk, who directed him to Mr. Rosenberg; thinks Mr. Reese was then in Europe, or he might have been dead; called on Mr. Rosenberg, and told him that the fence was across the street, in his way, and he wanted to know what to do with it; Rosenberg referred him to Mr. Taylor; saw Mr. Taylor, who said he would look into the matter, and see Mr. Rosenberg, and asked him (witness) to call again in a day or two; about two days afterward saw Mr. Rosenberg again, " and he said they were not going to contest the opening of the street, but if I took down the fence to take care of the lumber, and put it where it would be safe, so that they can use it again in putting the fence upon the line of the street." I had the fence taken down and piled it up on Mr. Reese's lot; when I began the work of grading this street, I believed that it was an open public street dedicated to public use, and had no reason to doubt that; I knew there were parties claiming it as private property along through what was called the Laguna survey of the one-hundred-vara lots; parts of Union Street were fenced in within the Laguna survey; I did not know they were fenced in as being parts of their lots.

Plaintiff then read in evidence sundry deeds made by defendant since 1882, conveying lots to various persons fronting on that part of Union Street in question.

From the foregoing we conclude that all parts of the "first" finding are sustained by the evidence, and that this finding and the others not objected to support the judgment without aid from the third finding, as to which we express no opinion.

The plaintiff also put in evidence the patent of the United States to the city of San Francisco, dated June, 20, 1884, granting the pueblo lands of the city with certain reservations; and thereupon, and upon acts of Congress, and of the legislature of California, and the

decisions of our courts, state and federal, counsel for appellant constructed a lengthy and ingenious argument to show that alcalde grants did not convey the absolute title, and did not deprive the pueblo or its successor, the city of San Francisco, of the right to open streets through the lands granted without compensation.

This conclusion seems to be squarely in conflict with the decision of this court in *Scott* v. *Dyer*, 54 Cal. 430, in which the effect of an alcalde grant of one-hundred-vara lot No. 11 of the Laguna survey, made by Alcalde Leavenworth in September, 1848, and in all respects apparently similar to those in question here, was considered, and in which the former cases bearing upon the affect of such grants were reviewed. The decision of the court was, that the alcalde grant conveyed the absolute title in fee, McKinstry, J., saying: "The plaintiff being the absolute owner of the lands described in the complaint (lot No. 11), they cannot be entered upon without her consent; nor can any portion of them be appropriated to the use of the public as a street, except upon due compensation paid or secured, in pursuance of proceedings prosecuted for that purpose."

We think the judgment and order should be affirmed, and so advise.

HAYNE, C., and FOOTE, C., concurred.

The COURT.—For the reasons given in the foregoing opinion, the judgment and order are affirmed.

Hearing in Bank denied.