[S. F. No. 5853.   Department Two.—September 27, 1912.]

MARY N. BURK, Sometimes Known as and Called Mary N. Burke, Appellant, v. CITY OF SANTA CRUZ (a Municipal Corporation), Respondent.

DEDICATION—PUBLIC STREETS—MAP RECORDED WITHOUT AUTHORIZATION —KNOWLEDGE OF OWNER OF RECORDATION—ASSESSMENTS ACCORDING TO MAP—ESTOPPEL.—The intent of the owner of a tract of land to dedicate portions thereof as public streets cannot be inferred, nor is the owner estopped to deny the dedication, merely because she had knowledge of the recordation of a map of the tract, which was absolutely unauthorized by and without binding force upon her, on which such portions were delineated as public streets, nor because the remaining portions of the tract were assessed to her, against her protest, in accordance with the subdivisions shown by such map.

ID.—DEFENSE OF ESTOPPEL MUST BE PLEADED.—In an action against a municipality to quiet title to land claimed by it as public streets, acts relied on as estopping the plaintiff from denying her intent to

dedicate the streets must be pleaded; otherwise they cannot be considered.

Id.—Dedication How Established.—Where a dedication rests in acts and conduct and not in grant, the rule is well settled "that property cannot be taken for public use without compensation unless the owner is willing and this willingness should be manifested by clear and unmistakable acts."

APPEAL from a judgment of the Superior Court of Santa Cruz County and from an order refusing a new trial. Lucas F. Smith, Judge.

The facts are stated in the opinion of the court.

Cassin & Lucas, for Appellant.

J. Leslie Johnston, City Attorney, and Hugh R. Osborn, for Respondent.

HENSHAW, J.—Mary N. Burk sued to quiet title to a tract of land situated in the city of Santa Cruz. The defendant, the city of Santa Cruz, asserted that "it was the owner and entitled to a right of way for street and sewer purposes over those certain public streets" delineated upon the map known as Garfield Park No. 1, filed June 7, 1890, and named Bethany Circle, Walk Circle, and Raymond Circle. Further, defendant "avers the fact to be that the said streets hereinabove mentioned have been dedicated as public streets by said defendant and that the same have been accepted by the city of Santa Cruz and have been at all times since said dedication and acceptance used and traveled as public streets by the public in general." Judgment passed for defendant, and from that judgment and from the order denying her motion for a new trial plaintiff appeals. Plaintiff has since died and her personal representative, Charles L. McFarland, has been substituted as plaintiff. The court found that plaintiff owned the land described in her complaint, but further found that the streets named in defendant's answer "have been dedicated as public streets by said defendant and that the same have been accepted by the city of Santa Cruz, and that the same have been at all times since said dedication and acceptance used and traveled as public streets by the public in general with the knowledge and consent of plaintiff."

The facts disclose that the map of Garfield Park No. 1 delineates and delimits a large tract of land, including the oblong piece owned by plaintiff.   The center of the land upon this map is circular in shape and designed apparently as a public park or recreation ground.   Immediately surrounding this central plat is a circular street known as Everett. Circle. Distant from the outer boundary of Everett Circle about one hundred and fifty feet, is delimited another street known as Wilkes Circle.   At the same distance beyond Wilkes Circle, is, in like manner, delimited Walk Circle.   Beyond Walk Circle, in the same way, Bethany Circle, and next to Bethany Circle, Raymond Circle.   Radial streets intersect these circular streets and one of them, Garfield Avenue, which cuts plaintiff's oblong piece of land in two unequal portions, is admittedly a public highway.   Upon this map of Garfield Park all the land between the circular and radial streets is subdivided into lots and numbers.   Mrs. Burk's oblong piece of land is cut by Walk Circle, Bethany Circle, and Raymond Circle in such a manner and at such angles as to leave, according to the map of Garfield Park, fragmentary bits and pieces of lots. Indeed, it may be said that it would be strong evidence of mental incompetency for an owner to permit his land to be divided and dismembered as upon that map shown.

It should be said without delay, however, that plaintiff is relieved from this imputation because it is not shown or pretended to be shown that she in any way authorized or consented to the Garfield Park map, or even knew of its existence.   Moreover, it is established that she owned her land before the map was filed, and the map itself was so unwarranted and so unauthorized so far as plaintiff's property was concerned that it was by the court admitted in evidence only for the limited purpose of showing these circular streets in their relation to the land of the plaintiff.

What the evidence does establish is that Garfield Avenue divided plaintiff's land in two unequal oblong portions, the greater lying west of Garfield Avenue.   Garfield Avenue, as has been said, was concededly a public highway.   Plaintiff inclosed by fences her two pieces of land, maintained these fences until a year before the trial and farmed her whole tract, putting it to plow, and in so farming, raised crops upon the so-called Walk, Bethany, and Raymond Circles.

Still further it is shown that none of the so-called streets was ever used as a public street, and that they had no physical existence and no other existence than their delineation upon the map unauthorized by the owner of the property. There were no streets upon the ground. Says the superintendent of streets of the city, "The only streets. if any, were the streets upon the map." Further, it is shown that the city intruded upon plaintiff's land in 1905 and undertook to remove the fences maintained by plaintiff, first passing a resolution that it was for the best interests of the city and of the inhabitants thereof that the "streets running through and along said property of Mary N. Burk be opened." Pursuant to this resolution the city, against the protest of the plaintiff, did tear down the fences and proceeded to build sewers upon one or another of these circular streets, and then, according to the evidence, admitted without objection and without conflict, "both the city engineer and the city attorney advised the city officers that they had no title to those streets and in order to protect the city from any further trouble we gave them an easement to the two sewers already laid in the ground. The city received that deed and accepted that map of Prospect Park." Such is the testimony of plaintiff's agent. And it appears that the plaintiff did file a map of Prospect Park. which map was a subdivision of her own land, and which map was a distinct repudiation that Raymond, Bethany, and Walk Circles extended over her land, and which map, furthermore, delimited and laid out other and different streets. This map was officially recognized by the mayor and city council of the city of Santa Cruz with formal acceptance "on behalf of the public of the streets as shown and delineated on this map as public highways as the same are there designated." Furthermore, the city accepted a deed from plaintiff for a right of way to maintain the sewers which it had unlawfully constructed upon plaintiff's land, and accepted this deed without any mention of the circles in which the sewers were constructed, but by express reference and description according to the Prospect Park map which plaintiff had filed and for which alone she was responsible.

But it is said by respondent that the acts of the plaintiff estop her from denying that it was her intent to dedicate the streets. It would be a complete answer to this to say that if

*estoppel in pais* was relied upon it was the duty of the defendant to have pleaded this estoppel, and not having pleaded it it cannot be considered. Such is the uniform rule of decision laid down by this court from the case of *Clarke* v. *Huber*, 25 Cal. 593, and to *Chapman* v. *Hughes*, 134 Cal. 641, [58 Pac. 298, 60 Pac. 974, 66 Pac. 982]. But waiving this consideration, in what does the evidence consist showing her intent to dedicate? It is said to consist in her knowledge that the map of Garfield Park was recorded, but if she had such knowledge it committed her to no course of conduct. It compelled her to do nothing, for, not only, as has been said, was the map of Garfield Park absolutely unauthorized by and without binding force upon plaintiff, ·but the trial court recognized this by admitting that map for the sole purpose of showing the location with reference to plaintiff's land of the circular streets. The second and only remaining fact is that the assessor of the city assessed plaintiff's land by the lots set off and numbered upon the Garfield Park map. If such a fact can be regarded as evidence establishing a dedication to a public use, or as evidence to estop a party from denying such a dedication, then to municipalities desiring to acquire property is pointed out a direct, though novel method. Let the city's assessor fail to assess the property to the owner and it becomes the property of the city by gift or dedication because the owner is estopped to assert the contrary. However, if this be so, the converse must be equally true, and if the assessor of San Francisco should assess Market Street to the abutting property owners and they should pay the assessment, Market Street would immediately become private property and the city be estopped from asserting the contrary. In truth it is too preposterous to merit serious consideration that a ministerial officer like the assessor charged only with the duty of assessing property which should be assessed can by his mistaken act of omission or commission raise an estoppel for or against the city as to a matter in which he has absolutely no authority. But, finally, and the more completely to dispose of this, it is shown and it is uncontradicted that plaintiff protested against this form of assessment and insisted that her land had not been subdivided and should be assessed as acreage property.

Where a dedication rests in acts and conduct and not in grant, the rule is well settled and has been many times repeated by this court to the effect that "property cannot be taken for public use without compensation unless the owner is willing, and this willingness should be manifested by clear and unmistakable acts. Parties may not be done out of their property by doubtful implications no matter how greatly the public may be inconvenienced." (*Cerf* v. *Pfleging,* 94 Cal. 135, [29 Pac. 417]; *Latham* v. *City of Los Angeles,* 87 Cal. 519, [25 Pac. 673]; *San Francisco* v. *Canavan,* 42 Cal. 553; *Spaulding* v. *Bradley,* 79 Cal. 449, [22 Pac. 47]; *San Francisco* v. *Groat,* 120 Cal. 60, [65 Am. St. Rep. 155, 41 L. R. A. 335, 52 Pac. 127].) No case before this court has ever evinced a plainer attempt to do the very thing which the law thus forbids.

The judgment and order appealed from are therefore reversed.

Lorigan, J., and Melvin, J., concurred.