[L. A. No. 6092. In Bank.—March 5, 1921.]

CHARLES LANTZ, Appellant, v. CITY OF LOS ANGELES (a Municipal Corporation), Respondent.

[1] HIGHWAYS — MANNER OF CREATION. — Under section 2621 of the Political Code, since its amendment in 1883, the mere user of a route of travel by the public will not constitute the land a public highway, but it must be declared to be such by the proper authorities or become such by dedication by the owner.

---

1. Presumption of dedication from user of highway, note, **Ann. Cas.** 1914D, 335.

[2] ID.—DEDICATION—EVIDENCE—USER.—User of a strip of land by the public as a route of travel may constitute some evidence of dedication, which, taken with other evidence showing an intent to dedicate, may amount to sufficient proof of dedication to satisfy the requirements of section 2621 of the Political Code.

[3] ID.—IMPLIED DEDICATION — SUFFICIENCY OF EVIDENCE. — Where it appeared upon the face of a recorded map of a subdivision of a tract of land that certain land designated thereon as a street was not between adjoining lots but on one lot leaving a strip of such lot between the street and the other lot, but notwithstanding the recordation of such map, the strip remained uninclosed and unimproved and was continuously used as a portion of the street by the public for many years without objection and finally sold for taxes, there was an implied dedication of such strip as a portion of the street.

[4] ID.—DEATH OF OWNER—NONINTERFERENCE WITH IMPLIED DEDICATION.—The death of the owner of a strip of land after its adverse use on the part of the public has begun and the failure for many years to appoint an administrator of his estate will not interfere with the implication of dedication as a result of a long period of permissive use.

[5] QUIETING TITLE — EASEMENT FOR STREET PURPOSES — IMPLIED DEDICATION—PREVIOUS CONDEMNATION SUIT—ABSENCE OF ESTOPPEL.—In an action to quiet title to land over which a city claims an easement for street purposes, the city is not estopped from claiming an implied dedication of the easement by the mere commencement by it of a previous action to condemn the land for such purposes, where the easement had ripened prior to the commencement of the condemnation suit.

[6] ID.—LEVY AND COLLECTION OF TAXES—ABSENCE OF ESTOPPEL.— A city is not estopped from claiming an implied dedication of land for street purposes by reason of the levy and collection of taxes thereon during the period of user.

[7] APPEAL—JUDGMENT NOT IN CONFORMITY WITH FINDINGS—ENTRY OF PROPER JUDGMENT—POWER OF APPELLATE COURT.—Where a judgment of a trial court is not in conformity with the findings nor with the conclusions of law, the appellate court has the power to direct the entry of the proper judgment.

[8] QUIETING TITLE — EASEMENT FOR STREET PURPOSES — FINDINGS— PROPER JUDGMENT.—Where in an action against a municipal corporation to quiet title to a strip of land over which the city claimed an easement for street purposes the findings of fact and conclusions of law were to the effect that the plaintiff was the owner of the land and the city the owner of an easement, the judgment should not have been that plaintiff take nothing and that defendant recover costs, but that plaintiff was the owner subject to the easement.

APPEAL from a judgment of the Superior Court of Los Angeles County. John M. York, Judge. Reversed.

The facts are stated in the opinion of the court.

Charles Lantz, Howard F. Shepherd, Samuel M. Garroway and Winslow P. Hyatt for Appellant.

Charles S. Burnell, City Attorney, Jess E. Stephens, Assistant City Attorney, and J. H. O'Connor, Deputy City Attorney, for Respondent.

THE COURT.—The district court of appeal rendered an opinion, prepared by Mr. Justice Richards, affirming the judgment in this case. It is as follows:

"This action was originally commenced by one T. A. Davis against the city of Los Angeles to quiet title to a strip of land described as 'the westerly four hundred feet of lot A of the Euclid Heights Tract as per map thereof recorded,' etc., of which the plaintiff claimed to be the owner and entitled to the possession. The answer of the defendant denied that the plaintiff was the owner or entitled to the possession of said tract or any portion thereof, and alleged that said defendant was the owner of an easement over the said property for its entire width and length for street purposes. The defendant further alleged that for more than five years prior to the commencement of the action it had been in quiet and peaceable possession of said strip of land, holding and claiming the same for street purposes adversely to the plaintiff and all other persons, and that plaintiff's alleged cause of action was barred by section 318 of the Code of Civil Procedure.

"Subsequent to the commencement of the action the present plaintiff was substituted in the place and stead of T. A. Davis as the plaintiff in said action by the order of the court.

"Upon the trial and submission of the cause the findings of fact and conclusions of law were to the effect that the said substituted plaintiff was the owner of the strip of land in question, but that for more than five years prior to the commencement of the action the city of Los Angeles had been the owner of an easement over the entire strip for

street purposes, holding and using the same in quiet and peaceable possession for such purposes adversely to plaintiff and his predecessors in interest and all other persons. The decree followed the findings and conclusions of law in respect of the ownership of the tract by the plaintiff, subject to the easement of the city of Los Angeles thereon and thereover for street purposes. The plaintiff appeals from such judgment.

"The facts of the case as disclosed by the record without serious conflict are these: In the year 1883 a subdivision was made of certain lands in blocks 72 and 73 of what was known as the Hancock survey, and a map of such subdivision was made and recorded by Workman & Hellman, who had made said subdivision. Certain main and cross streets were delineated upon said map intersecting said tract. One of these was Stevenson Avenue, at right angles to which ran Euclid Street. These two streets bounded on the south and west block 7 of said tract, which was in turn subdivided into Lots 26, 27, 28, 29, 30, 31, and 32, which lay in their order along Euclid Street from the point of its intersection with Stevenson Avenue northerly. In the year 1887 lot 26 of this tract was subdivided by the then owner thereof into a number of smaller lots under the name of the Alta Vista Tract, and a map of such subdivision was made and recorded on November 22d of that year. This map purported to show the lots of the subdivision as fronting on a sixty-foot street, which was given the name of Adelaide Street on said map. It appeared, however, that only ten feet of said Adelaide Street was taken from said lot 26, the other fifty feet thereof being within the original boundaries of lot 27 of said larger tract. Shortly thereafter a similar subdivision was made of lots 27 and 28 of said larger tract under the name of Euclid Heights Tract, and a map of such subdivision was made and recorded on December 16, 1887. By this map also Adelaide Street was laid out and defined as being forty feet in width, said forty feet running the entire length of said lot 27, and being the inner forty feet of the southerly fifty feet in width of said lot. It thus appeared upon the face of said map of the Euclid Heights Tract that there was a strip of land ten feet in width lying along the southerly side of Adelaide Street as laid out thereon, which strip was designated as lot A, which lot, run-

ning the entire length of said street, lay between the forty-foot street laid out along the southerly portion thereof as designated upon said map and the northerly line of lot 26 of said larger tract. Upon the filing for record of these two maps Adelaide Street appeared by the first of them to be a street sixty feet in width, to which there had been contributed by lot 26 ten feet in width along the entire northerly line of said lot; while by the other map of the Euclid Heights Tract Adelaide Street appeared to be a street forty feet in width running the entire length of lot 27, but ten feet within the exterior boundaries thereof, leaving a rectangular strip of land ten feet in width, which was designated as lot A, and which strip of land, if held in private possession, would have cut off the lot owners of the subdivision of lot 26, known as the Alta Vista Tract, from access to the forty-foot street laid out upon the map of the Euclid Heights Tract.

"Such was the state of things as shown upon these two maps at the close of the year 1887. Thereafter at some time the name of Adelaide Street was changed to Oregon Street, and the public began traveling said Oregon Street in going to and from the subdivisions of these two tracts and in gaining access to other connecting streets. In so doing the entire sixty feet in width of Adelaide Street came to be increasingly used by the traveling public regardless of the fact that said lot A, which stood of record in private ownership, lay along near the middle of said street for the entire length thereof. The record herein does not seem to disclose the name of the owner of record of said lot A prior to the year 1891; but it was stipulated during the trial that on January 26, 1891, the record title to said lot A was vested in one R. B. Anderson. Said Anderson died in the year 1895, but upon what date is not shown. An administrator of his estate was not appointed until the year 1909. In the meantime there had been a sale of said lot A for city taxes in the year 1896 to one Sanders, and a sale for state and county taxes for the same year to the state. In the latter part of the year 1910 said Sanders brought an action and obtained a decree quieting his title against the administrator of the estate of R. B. Anderson, deceased. In the meantime lot A had been again sold for taxes in the year 1905 to one Barlow, who

shortly thereafter deeded whatever rights he had acquired
by said tax sale to one Brown, who in his turn, on Decem-
ber 14, 1910, made a deed of said strip to Sanders and
Lantz, who in turn deeded the strip to T. A. Davis in the
year 1916. Davis reconveyed the strip to Lantz on June 23,
1917, after the commencement of this action.

"During the period between 1891 and 1910 Adelaide, or,
as later known, Oregon, Street for its entire width of sixty
feet, including said lot A, was being used by the traveling
public, apparently without any hindrance, interference, or
objection by the owner or owners of the record title thereto,
the only indication of any private ownership in or claim to
lot A consisting in the fact that said R. B. Anderson during
the first few years of said period had paid the taxes which
were levied and assessed thereon, but that finally said strip
had been sold for unpaid state, county, and city taxes, the
title thereto finally thereby passing in about the year 1908
to said Sanders, and through him by mesne conveyances
into the name of T. A. Davis in the year 1916. The first
connection of the present plaintiff and appellant with said
strip began in the year 1910, when he acquired another tax
title thereto through a tax sale thereof to one Barlow in
1905. In the year 1909 the city of Los Angeles commenced
an action to condemn said lot A for street purposes, making
R. B. Anderson, B. F. Sanders, Avery M. Brown, and several
other real and fictitious persons parties defendant to said
action, who were alleged to have or claim some interest in
said strip of land. This action was apparently inspired by
the fact that said city of Los Angeles had adopted an ordi-
nance in the year 1909 providing for the improvement of
said Adelaide or Oregon Street, and in the course of said
proceeding had been given to understand that there were
certain persons who claimed to be the owners of the strip
known as lot A lying along the middle of said street. The
defendant A. M. Brown and B. F. Sanders appeared and
answered in said action, each alleging himself to be the
owner of said lot A, and praying for considerable sums in
damages in the event of condemnation thereof. This action
was never brought to trial but remained pending until some
time after the present action was begun, and was dismissed
by the plaintiff during the trial of this case. During all of
the time between the date of the commencement of said con-

demnation suit in the year 1909 and the dismissal thereof in the year 1917 the general public continued to travel and use said Adelaide or Oregon Street and said strip of land as a portion thereof without objection or interference on the part of any person claiming to be the owners of the same.

"The appellant herein makes several contentions upon this appeal. The first of these is that the evidence is entirely insufficient to show that the city of Los Angeles had acquired through user an easement for street purposes on or over the premises in question. This contention is based upon the construction which the appellant places upon section 2621 of the Political Code, which section as amended in the year 1883 reads as follows:

"'A road laid out and worked, and used as provided in this chapter, shall not be vacated or cease to be a highway until so ordered by the board of supervisors of the county in which said road may be located, and no route of travel used by one or more persons over another's land, shall hereafter become a public road or byway by use, or until so declared by the board of supervisors or by dedication by the owner of the land affected.'

[1] "There can be no question but that since the enactment of said section of the Political Code in its present form the mere user of a route of travel by the public for a period of five years or more did not of itself suffice to constitute the strip of land used by said route of travel a public highway. It was essential, in order to do so under said section of the code, that such strip of land must have either been so declared to be by the board of supervisors of the county [or by the proper city authorities of the city of Los Angeles] in which the same was located, or must have become so by dedication by the owner of the tract;   [2] but it does not follow from this that the user of such strip of land by the public may not constitute some evidence of its dedication which, taken with other evidence showing expressly or by implication an intent on the part of the owner of the land to dedicate the same to public uses, may amount to sufficient proof of such dedication thereof as would satisfy the provisions of the foregoing section of the Political Code.

[3] "There is in the instant case sufficient evidence, we think, to establish the fact that the use which the general public made of Adelaide or Oregon Street during the years

1895 and 1909 was a sufficiently continuous use of every portion of the sixty-foot width of said street, and hence of that portion of the lands embraced within the exterior boundaries of said street and known as lot A, to have put the owners or claimants of said lot A upon notice that the same was being used as a portion of said street. When to this proof is added the further proof that said portion of said street was used as such without objection and with the permission, or at least without any objection on the part of said owners or claimants of said tract for a period of time sufficient to justify the finding of an implied dedication thereof; and when to these proofs there was also added certain other facts shown in the evidence herein which would aid in deducing this inference, such as the showing as to the shape of said strip and its location with respect to said street, and its severance from the other lots of the Euclid Heights Tract, taken with the fact that it remained uninclosed and unimproved, and in fact not susceptible of any particular use for building purposes, and that during all those years its owners allowed it to present the appearance of being a portion of said street, and thus in a sense invited the general public to make the same use of it that was being made of the rest of said street—these facts, and the further fact that R. B. Anderson, who was the admitted record owner of said lot A in 1895, permitted it to be sold for taxes, and that neither he nor his heirs thereafter ever asserted any claim to said strip, and that the claim now asserted thereto by the plaintiff herein is one having its sole foundation in tax titles, and that even this plaintiff or his immediate predecessor never in any way interfered with the use by the public of said strip as a public street—these facts, in our opinion, amply suffice to give rise to the presumption of an implied dedication of said strip of land to public uses as a portion of said Adelaide or Oregon Street. (*Leverone* v. *Weakeley,* 155 Cal. 395, [101 Pac. 304]; *Hartley* v. *Vermillion,* 141 Cal. 339, [74 Pac. 987]; *Sherwood* v. *Ahart,* 35 Cal. App. 84, [169 Pac. 240].)

[4] "It is, however, urged by the appellant that the fact that R. B. Anderson died in the year 1895, and that no administrator of his estate was appointed until 1909, would interfere with the operation of the rule above stated with

respect to an implied dedication of said strip of land. It was, however, early held in this state that where the statute of limitations had commenced to run, its operation would not be suspended by the death of the person affected by its operation (*Tynan* v. *Walker*, 35 Cal. 634, [95 Am. Dec. 152]) ; and this principle has been given recent application in the case of *Cortelyou* v. *Imperial Land Co.*, 166 Cal. 24, [134 Pac. 981], and *Sullivan* v. *Gillon*, 26 Cal. App. 421, [147 Pac. 215]. While the doctrine of these cases was given specific application therein to the running of the statute of limitations, we are satisfied that the same principle is properly applicable to cases like the one at bar, where the adverse use on the part of the public has begun, and where consequently it was the duty of the owner or claimant of the premises to take such action in the way of asserting his claim as would interfere with the implication of dedication as a result of a long period of permissive use.

[5] "The appellant further contends that the fact that the city of Los Angeles in the year 1910 commenced an action against the predecessors of the present plaintiff to condemn said strip of land for public uses as a portion of said street, which action, while pending between the time of the institution thereof and the commencement of the present action, was never brought to trial, is sufficient to operate as an estoppel against the defendant's plea as an implied dedication in the instant case. Probably this would be true if the present claim of said defendant to an easement in said strip for public uses had not fully ripened long prior to the commencement of said condemnation suit; but that such was the fact we think is sufficiently established in the present case, and hence the principle of estoppel upon which the appellant thus relies cannot be given application to defeat the right of the public in and to said strip as a portion of said street which was fully acquired before the institution of said condemnation suit.

[6] "Neither do we think that any estoppel arose from the fact that during a period of several years between 1895 and 1909 taxes were levied and collected upon said strip of land. In the case of *Burke* v. *City of Santa Cruz*, 163 Cal. 807, [127 Pac. 154], the supreme court, in dealing with a similar question, says: 'In truth it is too preposterous to

merit serious consideration that a ministerial officer like the assessor, charged only with the duty of assessing property which should be assessed, can by his mistaken act of omission or commission raise an estoppel for or against the city as to a matter in which he has absolutely no authority.' See, also, *City of Seattle* v. *Hinckley*, 67 Wash. 273, [121 Pac. 444], in which the supreme court of Washington says: 'The right of the public to use the land as a street established by a continuous and uninterrupted use cannot be admitted away by the taxing officers. The rights of the public in a highway are not affected by the listing of the premises for taxes or the payment of taxes when assessed.'

"The reasoning of the foregoing cases has also application to the final contention of the appellant, which is that the trial court erred in sustaining objections to his offer to prove the payment of taxes for the years 1910, 1911, and 1912. These offers on his part related to taxes levied and assessed long after the defendant's right to its easement in said strip of land had fully ripened through its adverse user thereof as a portion of the public street and through the implied dedication thereof to such uses by the predecessors of said plaintiff prior to his acquisition of any interest or ownership in the same."

This opinion is adopted as the opinion of this court. [7] The judgment below is not in accordance with this opinion. It merely declares that the plaintiff take nothing and that defendant recover costs. This was not in conformity with the findings, nor with the conclusions of law therein declaring the relief to be given to the parties, as it should have been, and it is not just to the plaintiff. The court, on appeal, has the power to direct the court below to enter the proper judgment in such cases, and it should do so.

[8] The judgment is reversed, neither party to recover any costs of appeal, and it is ordered that on the going down of the *remittitur* the court below enter judgment as follows:

It is ordered, adjudged, and decreed that the plaintiff is the owner in fee simple of the tract of land described in the findings, subject, however, to an easement therein for the use of said parcel of land as a public street, which easement is hereby adjudged to belong to the city of Los Angeles. It

is further adjudged that the defendant recover of plaintiff its costs herein laid out and expended, taxed at $——.

Shaw, J., Olney, J., Wilbur, J., Sloane, J., Lennon, J., Angellotti, C. J., and Lawlor, J., concurred.