[No. 13040.  In Bank. — January 21, 1892.]

ELISHA ARCHER, APPELLANT, v. SALINAS CITY, RESPONDENT.

DEDICATION — STREETS — PUBLIC PARK — RECORDED MAP — SALES OF LOTS. — Where the owner of property within the limits of an incorporated city makes and records a map of such property, by which he subdivides the same into blocks and lots bounded by streets, which are continuations of existing streets, and designates a space or block thereon as a park, and circulates copies of the map, and states in an advertisement of an auction sale thereof, and the auctioneer represents to the purchasers at the sale, that the block is reserved for a park, and lots are sold upon the streets bounding upon the park, he thereby dedicates the streets and park to the public use.

ID. — MEANING OF "PARK." — The word "park," written upon a block of land designated upon a map of property within the limits of an incorporated city or town, signifies an open space intended for the recreation and enjoyment of the public, and this signification is the same whether the word be used alone or with some qualifying term, as "Central Park."

ID. — DEDICATION AN ULTIMATE FACT. — Dedication is an ultimate fact dependent upon the establishment of other facts, and is to be found from the evidence presented to the court.

ID. — EXPRESS AND IMPLIED DEDICATION. — Dedication may be express, and completed by a single act or deed, or it may be implied from a series of acts.

ID. — CONCLUSIVENESS OF DEDICATION. — Whenever a dedication is complete, the property thereby becomes public property, and the owner loses all control over it or right to its use, and the effect of the dedication cannot be qualified by any act or declaration thereafter made on his part.

ID. — DIVERSION FROM PUBLIC USE — ADVERSE POSSESSION — DELAY IN USER. — Property dedicated to the public cannot be diverted by the public from the use for which it was dedicated, nor can it be lost by adverse possession, nor is the effect of the dedication impaired by any delay in the use of the land for which it was set apart. A failure of the public to make use of the land does not authorize the owner to resume possession.

ID. — OFFER — ACCEPTANCE — ACTUAL DEDICATION — PRESUMPTION — PUBLIC OBLIGATION. — Though an offer to dedicate is not complete until accepted on the part of the public, yet when an actual dedication has taken place, an acceptance is presumed from the benefit arising from such dedication, even though there may not be imposed upon the public an obligation to make expenditures upon the streets.

ID. — MORTGAGE PRIOR TO DEDICATION — SUBSEQUENT DEED TO MORTGAGEE. — Although the security of a mortgage given prior to a dedication cannot be impaired by the dedication, and the purchaser at a foreclosure sale would acquire a title freed from the encumbrance of the dedication, yet the acceptance by the mortgagee of a deed in satisfaction of the debt gives to him only such title as the mortgagor had at the time of the execution of the deed, and the title is subject to the dedication made by the mortgagor.

| 93 | 43 |
| 100 | 305 |
| 93 | 43 |
| 103 | 435 |
| 93 | 43 |
| 115 | 697 |
| 93 | 43 |
| 125 | 467 |
| 93 | 43 |
| 132 | 244 |
| 93 | 43 |
| 134 | 610 |

APPEAL from a judgment of the Superior Court of Monterey County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*S. F. Geil,* and *H. V. Morehouse,* for Appellant.

"Central Park," so called, having been laid out and mapped by. the mortgagor, the mortgagor could not dedicate the same as against the plaintiff, the mortgagee. (*City of Moberly* v. *McShane,* 7 Am. & Eng. Corp. Cas. 405; 5 Am. & Eng. Ency. of Law, 398.) "Central Park" was under a mortgage from 1874 to 1880, and the mortgagor could not dedicate it to the defendant, as such an act would impair the security. (Civ. Code, sec. 2929.) And it needs no argument to show that the dedication of the real property under mortgage would impair the security, and mere silence of the mortgagee does not prevent him from claiming the property. (*City of Moberly* v. *McShane,* 7 Am. & Eng. Corp. Cas. 405.) The question of dedication is one of intent. (*Lee* v. *Lake,* 14 Mich. 12; 90 Am. Dec. 220; *Phillips* v. *Day,* 82 Cal. 24.) The "Central Park," so called, never was thrown open to the public or accepted by the public, or used or accepted by Salinas City, the defendant, and therefore there could not be any dedication. (*People* v. *Reed,* 81 Cal. 79; 15 Am. St. Rep. 22; 5 Am. & Eng. Ency. of Law, 412, 413; *San Francisco* v. *Calderwood,* 31 Cal. 585; 91 Am. Dec. 542; *People* v. *Williams,* 64 Cal. 498; *Hayward* v. *Manzer,* 70 Cal. 480; *Spaulding* v. *Bradley,* 79 Cal. 449; *Harding* v. *Jasper,* 14 Cal. 647) There was, then, no irrevocable dedication, because of no acceptance by the public. (*Hayward* v. *Manzer,* 70 Cal. 480; *San Francisco* v. *Canavan,* 42 Cal. 541.) The acceptance must be manifested by user, and as there was no user, the owner could revoke the dedication. (*San Francisco* v. *Canavan,* 42 Cal. 541.) An offer to dedicate by filing a map is withdrawn by a subsequent sale of the whole property under a deed omitting the designation of the streets, etc., before any

acceptance by the public.    (*Phillips* v. *Day*, 82 Cal. 24.)
The acceptance must be within a reasonable time after
the offer of dedication, and if not accepted, the owner
may resume the possession of the property, and thereby
revoke the offer.    (*People* v. *Reed*, 81 Cal. 79; 15 Am. St.
Rep. 22; *Hayward* v. *Manzer*, 70 Cal. 476; *State* v. *Trask*,
6 Vt. 355; 27 Am. Dec. 554; *Field* v. *Manchester*, 32
Mich. 279; *County of Wayne* v. *Muller*, 31 Mich. 447.)
The findings of the court are against both law and evi-
dence, for there is no evidence of any kind in the record
of user on the part of the public, or formal acceptance
on the part of the city of Salinas, and therefore the judg-
ment should be reversed.    (See *People* v. *Reed*, 81 Cal.
79; 15 Am. St. Rep. 22; *Hayward* v. *Manzer*, 70 Cal. 476;
*Harding* v. *Jasper*, 14 Cal. 647; *San Francisco* v. *Cana-
van*, 42 Cal. 552; *People* v. *Williams*, 64 Cal. 502; *City of
Galveston* v. *Williams*, 69 Tex. 449; *State* v. *Trask*, 6 Vt.
355; 27 Am. Dec. 554; *Gilder* v. *City*, 67 Tex. 345; *Cook*
v. *Harris*, 61 N. Y. 448; *Briel* v. *City of Natchez*, 48
Miss. 423; *Field* v. *Manchester*, 32 Mich. 279; *Hamilton*
v. *Chicago etc. R. R. Co.*, 124 Ill. 235; *Fisk* v. *Havana*, 88
Ill. 208; *City of Shreveport* v. *Drouin*, 41 La. Ann. 867;
*Miller* v. *Town etc.*, 30 W. Va. 606; *Stallard* v. *Cushing*,
76 Cal. 472.)

*W. M. R. Parker, B. V. Sargent*, and *Dorn & Parker*, for
Respondent.

Public dedications must be considered with reference
to the use for which they are made.    The right of the
original owner to disturb the use applies equally to the
dedication of the common as to the streets.    (*City of
Cincinnati* v. *Lessees of White*, 6 Pet. 431; *Mayor etc. of
New Orleans* v. *United States*, 10 Pet. 713; *United States*
v. *City of Chicago*, 7 How. 196; *Irwin* v. *Dixion*, 9 How.
30; *Trustees for Vincennes University* v. *State of Indiana*,
14 How. 274; *Barclay* v. *Howell's Lessee*, 6 Pet. 498.)
Dedication may be made in any form.    No particular
form of ceremony is necessary in the dedication of land
to public use.    All that is necessary is the assent of the

owner. (*City of Cincinnati* v. *White's Lessees*, 6 Pet. 430; *Brooks* v. *City of Topeka*, 34 Kan. 277; *Grafrey* v. *City of Alton*, 12 Ill. 29; 52 Am. Dec. 476.) There need be no grantee capable of taking the fee at the time of the dedication, and there need be no formal acceptance of the dedication by the public. (*School District* v. *Heath*, 56 Cal. 478; *Maywood Co.* v. *Maywood*, 118 Ill. 61; *Donohoo* v. *Murray*, 62 Wis. 100; *McConnell* v. *Lexington*, 12 Wheat. 582; *Cincinnati* v. *White's Lessees*, 6 Pet. 437; *Mayor of New Orleans* v. *United States*, 10 Pet. 662.) When a dedication is made, a use by the public is unnecessary. The right of the public to appropriate the land to public use at any future time when their wants or convenience require it immediately attaches. (*Barclay* v. *Howell's Lessees*, 6 Pet. 506; *Methodist Episcopal Church* v. *Hoboken*, 33 N. J. L. 13, 25; 97 Am. Dec. 696; *Child* v. *Chappell*, 9 N. Y. 246.) The mere fact of nonuser by the public does not authorize the party dedicating it to resume possession of the land. (*Prince* v. *McCoy*, 40 Iowa, 533.) The right to the use of a park or common is dependent on the same principles as the right to the use of the streets. (*Cincinnati* v. *White's Lessees*, 6 Pet. 438.) It is one of the essential elements of a dedication that it must be irrevocable. (*San Francisco* v. *Canavan*, 42 Cal. 553; *Irwin* v. *Dixion*, 9 How. 30.) A dedication, once made, cannot be revoked. The intention of the owner at the time is to be considered, not what it may be at some subsequent time. (*Ruch* v. *City of Rock Island*, 5 Biss. 85; *Adams* v. *Saratoga R. R. Co.*, 11 Barb. 414; *Abbott* v. *Mills*, 3 Vt. 521; 23 Am. Dec. 222.) Where one owning land makes a map showing the land to be divided into streets, alleys, blocks, and lots, and then sells lots with reference to such map, he thereby makes an irrevocable dedication of the space represented on the map as streets to the use of the public. And if there be public squares or plazas represented on the map, the same rule applies to them, and dedication may be established in the same manner. (*Town of San Leandro* v. *Le Breton*, 72 Cal. 170; *Rowan* v. *Town of Port-*

*land*, 8 B. Mon. 233; *Briel* v. *City of Natchez*, 48 Miss. 423; *Bartlett* v. *Bangor*, 67 Me. 464; *Wiggins* v. *McCleary*, 49 N. Y. 346; *Barney* v. *Mayor and City of Baltimore*, 1 Hughes, 118; *Ruch* v. *City of Rock Island*, 5 Biss. 85; *Price* v. *Town of Breckenridge*, 92 Mo. 378; *Donohoo* v. *Murray*, 62 Wis. 100; *Eastland* v. *Fogo*, 66 Wis. 133; *Abbott* v. *Mills*, 3 Vt. 521; 23 Am. Dec. 222; *Methodist Episcopal Church* v. *Hoboken*, 33 N. J. L. 25; 97 Am. Dec. 696; *Rutherford* v. *Taylor*, 38 Mo. 319; *Price* v. *Thompson*, 48 Mo. 365; *Comm'rs of Franklin Co.* v. *Lathrop*, 9 Kan. 464; *Maywood Co.* v. *Village of Maywood*, 118 Ill. 61.) The right of the mortgagee was only to have the debt paid. It was a mere security for the payment of money, and passed no estate in the land of Archer. (Civ. Code, sec. 2927; *McMillan* v. *Richards*, 9 Cal. 365; 70 Am. Dec. 655; *Dutton* v. *Warschauer*, 21 Cal. 609; 82 Am. Dec. 765; *Jackson* v. *Lodge*, 36 Cal. 39; *Goodenow* v. *Ewer*, 16 Cal. 461–467; 76 Am. Dec. 540; *Mack* v. *Wetzlar*, 39 Cal. 247; *Kidd* v. *Teeple*, 22 Cal. 255; Jones on Mortgages, sec. 20, and cases cited.) Archer released his mortgage as to each lot sold, describing the lot by the map filed by Stone, and stood by and made no objection, although he knew of the filing of the map. Besides, he has since made deeds by the map, and is himself estopped. (*Smith* v. *Heath*, 102 Ill. 130.) The intention to dedicate was manifested by his acts and his declarations, and not from what he might subsequently testify was his intention. (*Morgan* v. *Railroad Co.*, 96 U. S. 716; *City of Indianapolis* v. *Kingsbury*, 101 Ind. 201; 51 Am. Rep. 749; *Lamar Co.* v. *Clements*, 49 Tex. 347.)

HARRISON, J. — Action to quiet title to a block of land in Salinas City. Judgment was rendered for the defendant, upon the ground that the land in question had been dedicated for use as a public park. From this judgment and an order denying a new trial the plaintiff has appealed.

The land in question is a portion of a larger tract of

about two hundred acres within the limits of Salinas
City, of which the plaintiff was the owner on January
15, 1874, when he conveyed the same in fee to W. H.
Stone for the sum of twenty-five thousand dollars,
and received from him five thousand dollars in money,
and a mortgage on the same property to secure the re-
maining twenty thousand dollars. This mortgage was
renewed in 1878, and on December 24, 1880, Stone re-
conveyed a portion of the tract, including the block in
question, in satisfaction of the mortgage debt and other
obligations of his to the plaintiff.

In July, 1874, Stone caused the tract to be surveyed
and subdivided into blocks with streets connecting with
other streets that had been laid out in Salinas City,
marking the blocks with stakes set in the ground, and
on the 12th of March, 1875, filed in the recorder's office
of Monterey County a map of the tract, showing these
streets and blocks, and the subdivisions of the blocks.
Upon this map the block in question is laid down as
bounded by Park Street, Homestead Avenue, Central
Avenue, and Villa Street, and is itself marked " Central
Park." Prior to the filing of the map, Stone had adver-
tised in several newspapers that a sale of the tract would
be held March 15, 1875, and had made and circulated
copies of the map, and on the day of the sale he had an
enlarged copy of the map upon the ground, and sold at
public auction a very large number of the lots according
to the map. In the advertisement of the sale it was
stated that " in the center of this plat is located and held
in reservation a block 580 feet square for a city park."
At the sale it was represented that the square had been
laid out for a city park, and the auctioneer made frequent
references to this park as an inducement to pay ad-
vanced prices for lots in its vicinity, and the lots around
it were sold at much higher prices than those remote
from it. Stone was present at the sale, and made no
objection to any of these representations. Nearly all of
the lots upon the streets bounding the park and front-
ing thereon were sold at the sale, and during several

years after the auction other lots were sold with reference to the map, and after the conveyance to the plaintiff, and as late as 1887, deeds were executed by him with reference to the map. Previous to the auction sale, Stone had caused the land within this block to be laid out and planted with trees, and for several years thereafter he kept it fenced and had the trees cared for, and about 1884 the plaintiff cut some of the trees down and hauled away the wood, under the claim that he was the owner of the land. It does not appear that the city ever made any improvements upon the park, or took any steps with reference to it, until some time in 1887, when it took possession of the block, and very soon thereafter the plaintiff commenced this action.

Upon the foregoing facts, we are of the opinion that Stone dedicated the land in controversy for use as a public park, and that the finding of the court that the land was so dedicated is fully sustained by the evidence.

When the owner of property which is within the limits of an incorporated city or town makes and records a map of such property, by which he subdivides the same into blocks and lots bounded by streets which are continuations of other streets already laid out by the city or town, and sells and conveys the lots abutting upon those streets, he thereby dedicates to the public the streets so laid out by him as prolongations of other streets, as well as the other streets which are laid out upon such map intersecting and connecting the same; and if upon such map or plan he has designated a space or block as a public park, such space or block is as fully dedicated to public use as are the streets delineated thereon. The purchasers of such lots have not merely an easement in the streets upon which the lots abut, but all of the streets are set apart for the purpose of enabling such purchasers to have reciprocal intercourse with the public outside of the subdivided tract, and are thus themselves dedicated to the entire public for all purposes to which streets can properly be applied. The

same principles which are applicable to the dedication of public streets apply to the dedication of a public park or square. All dedications for public use are to be considered with reference to the purpose for which the dedication is made, or the use to which the property dedicated may be applied, and that purpose may be ascertained by the designation which the owner has affixed to the land upon the map, whether it be a street, a school lot, or a public park. The setting apart of a public park upon such map is for the convenience and enjoyment of the inhabitants of the place; and as it enhances the value of the private property fronting thereon, so the owner who has dedicated it is presumed to have received in the increased prices for which that property was sold the compensation for its surrender to the public as a public park.

The word " park," written upon a block of land designated upon a map, is as significant of a dedication, and of the use to which the land is dedicated, as is the word "street," written upon such map. The word carries with itself the idea of an open or inclosed tract of land for the comfort and enjoyment of the inhabitants of the city or town in which it is located, and is so defined by lexicographers. In England, the word, when applied to an inclosed tract of land in the country, has a different signification, and signifies that the lands inclosed are the private grounds of the proprietor. In this country, too, a man may inclose his own land and style it a park, or give that name to his place, without giving to the public any right to its use, for in such a case there would be no semblance of dedication; but the meaning of a word is to be determined by the circumstances connected with its use. In London, as well as in any city in this country, the term " park " signifies an open space intended for the recreation and enjoyment of the public, and this signification is the same, whether the word be used alone or with some qualifying term, as Hyde Park, or Regent's Park, or, as in the present case, " Central Park." Upon this point the authorities are uniform. (*Water-*

town v. *Cowen*, 4 Paige, 513; 27 Am. Dec. 80; *Price* v. *Plainfield*, 40 N. J. L. 608; *Carter* v. *Portland*, 4 Or. 339; *Cincinnati* v. *White*, 6 Pet. 431; *Rowan's Ex'rs* v. *Portland*, 8 B. Mon. 246; *San Leandro* v. *Le Breton*, 72 Cal. 170; Dillon on Municipal Corporations, secs. 640, 644.)

Dedication is an ultimate fact, dependent upon the establishment of other facts, and is to be found from the evidence presented to the court. (*Harding* v. *Jasper*, 14 Cal. 648.) It results from the acts of the owner of the land, coupled with the intent with which he does those acts. It may be express, and completed by a single act, as when the land is dedicated by deed, or it may be implied from a series of acts, as when the owner subdivides a tract of land into blocks and streets, and causes a map of such subdivision to be recorded, and sells the several subdivisions which front upon those streets. Whenever the dedication is complete, the property thereby becomes public property, and the owner loses all control over it or right to its use. Even though the acceptance presumed from an express dedication may not impose upon the public all the obligations that an express acceptance would impose, yet the owner is as much concluded by his dedication in the one case as in the other. If the dedication is complete by his act, whether express or implied, it is thereafter irrevocable by him, and the effect of such dedication cannot be qualified by any act or declaration thereafter made on his part. The property dedicated has become public property, impressed with the use for which it was dedicated, and neither can the public divert it from that use, nor can it be lost by adverse possession. Nor is the effect of such dedication impaired by any delay in the use of the land for which it was set apart. Such failure to make use of the land does not authorize the owner to resume possession. The public can thereafter appropriate the land to the use for which it was dedicated whenever convenience or necessity may suggest.

A distinction is to be observed between actual dedication and an offer to dedicate. In the latter case there

must be an acceptance on behalf of the public before the dedication is complete, and the owner may at any time before such acceptance revoke the offer, while in the former case the acceptance will be presumed from the benefit arising from the dedication.   The acceptance of an offer to dedicate may, moreover, be formal, as by resolution on the part of the city, or it may be implied, as by user or by adaptation for use, as in the improvement of the streets.   Merely recording a map of the subdivided tract, or simply designating the streets and blocks by stakes or monuments upon the ground, would constitute no more than an offer to dedicate.   Whether the owner, by making sales according to such map or designation, has made the offer with reference to other streets than those by which the lots sold are bounded, is a fact that the court must determine from the circumstances of each case, such as the number of sales, their proximity to the street claimed to have been dedicated, the use to which the land has been put, the means by which, or the extent to which, the streets have been brought into connection with other streets or highways.   The owner, after selling some of the lots according to such map, might, either with the consent of the purchasers, or if he should himself repurchase all of the lots so sold, withdraw such offer at any time before the public had acquired any interest in the streets, either from formal acceptance or by actual user.   (*Rowan's Ex'rs* v. *Portland,* 8 B. Mon. 236.) In *San Leandro* v. *Le Breton,* 72 Cal. 170, it was held that the sale of the blocks opposite the space designated on the map as "Court Square," with other lots and blocks upon the map, effected, as such, a dedication of that space that it could not afterwards be revoked by the owner. The principles relative to dedication and an offer to dedicate which are laid down in that case are in accord with the law upon that subject, as well as with previous decisions in this state, and should have controlling effect in the present case.

The failure to observe this distinction between a dedication and an offer to dedicate explains the apparent

discrepancy in the language used in various opinions, where it is said that a dedication is not complete until the city has given its acceptance. In this state, however, it has been the uniform rule, whenever the question has been presented for decision, that whenever an actual dedication has been made, no acceptance is required, but will be presumed, even though there may not, from such dedication, be imposed upon the public an obligation to make expenditures upon the streets. (*Harding* v. *Jasper,* 14 Cal. 642; *Stone* v. *Brooks,* 35 Cal. 497.) In *Hayward* v. *Manzer,* 70 Cal. 476, Castro, the owner of the land, made and recorded a map of the town of San Lorenzo in 1856, on which the street in question was delineated, and made some sales of land according to that map. The street, however, was not opened to the public, or even used as a public road. Within less than a year after making the map he conveyed a portion of the tract so laid out, including the place marked for this street, and it was thereafter held in possession under said conveyance. The town was not incorporated until 1876, and after such incorporation its authorities accepted this alleged dedication. The court held that these acts of Castro were only an offer to dedicate, which was revoked by his conveyance of the tract before the actual acceptance. In *Phillips* v. *Day,* 82 Cal. 24, the owner had made a map of the tract, marked streets and subdivisions upon the ground, and made sales of a few of the lots according to such map and subdivisions. The land was not, however, within the limits of any city or town, and the streets were not traveled, but were kept from use by the public by fences inclosing the entire tract. The lots conveyed by the owner were afterwards repurchased by him, and a sale made of the entire tract, including the streets, before any map was recorded. The court held that these circumstances amounted to only an offer to dedicate the streets, and that the sale of the entire tract operated as a revocation of such offer. In *City of Eureka* v. *Croghan,* 81 Cal. 524, the owner of the land made a conveyance in 1870, describing the tract con-

veyed with reference to certain streets as they would exist if projected through the tract, and, about four months afterward, sold the portion covered by these streets. It was held that the first conveyance was no more than an offer to dedicate, which was revoked by the second conveyance, distinguishing the case from those in which the owner has himself platted the land into blocks and streets, and sold the lots with reference to such streets. In *Eureka* v. *Armstrong*, 83 Cal. 623, the dedication was held complete, for the reason that the offer had been formally accepted before any attempt at revocation was made.

There is nothing *decided* in *People* v. *Reed*, 81 Cal. 70, 15 Am. St. Rep. 22, inconsistent with the foregoing principles, although there are certain expressions in the opinion in that case that may seem at variance therewith; but they were *obiter dicta,* or side remarks, and unauthoritative views of the justice who wrote the opinion. That the court did not intend to lay down any different rule from that which is given in *Stone* v. *Brooks*, 35 Cal. 497, or to qualify or limit the authority of that case, is evident from the fact that that case and others are cited on page 78 as authority for the proposition that "where the owner surveys and plats his property, and makes sales of lots with reference to such plat, the streets designated thereon are irrevocably dedicated to the public as streets." In fact, the question itself was not presented for decision, inasmuch as the facts in *People* v. *Reed*, 81 Cal. 70, 15 Am. St. Rep. 22, showed that there had never been more than an offer to dedicate. The map of the property was never recorded; the part of the alleged street in controversy was never opened as a street, but had for many years been fenced and occupied by substantial and permanent buildings; no sales of lots thereon were ever made; and it did not appear that any of the individuals who purchased property on other parts of the alleged street had ever seen the map of the property; and no action was taken by the city for more than twenty years after the map was made and the property inclosed

and permanently improved.   (*People* v. *Reed*, 81 Cal. 70; 15 Am. St. Rep. 22.)

When the plaintiff took the conveyance from Stone, in December, 1880, in satisfaction of Stone's indebtedness to him, the title thereby acquired was subject to the dedication in his hands as much as it would have been in the hands of any other grantee of Stone, and subject to this encumbrance as much as to any other encumbrance which Stone might have placed upon the land while he was the proprietor.   While Stone might not have made any dedication of the tract that would impair the security of the mortgage that he had previously made thereon, or that would have prevented a purchaser under a foreclosure sale under such mortgage from acquiring a title freed of such encumbrance, yet the acceptance by the mortgagee of a deed in satisfaction of the debt gave to him only such title as Stone had at the time when the deed was executed.

The judgment and order denying a new trial are affirmed.

DE HAVEN, J., PATERSON, J., McFARLAND, J., SHARPSTEIN, J., and GAROUTTE, J., concurred.