[Civ. No. 930. Fourth Appellate District.—August 4, 1932.]

DOROTHY GROSS, as Executrix, etc., Appellant, v. CITY OF SAN DIEGO (a Municipal Corporation), Respondent.

John C. Packard for Appellant.

M. W. Conkling, City Attorney, and H. C. Hopkins, Deputy City Attorney, for Respondent.

MARKS, J.—This is an action to quiet title to a strip of beach land in the town of La Jolla which the City of San Diego claimed had been dedicated by the owner, and accepted by the city, as a public way. Judgment was ren-

dered in favor of the city, and plaintiff has taken this appeal therefrom.

In 1900, Kate Maxwell was the owner of a parcel of real property in the northerly portion of Pueblo Lot Number 1260 in the City of San Diego, shown on a map of La Jolla Beach. This map was prepared for her, approved by her and recorded at her request on April 28, 1903. It divided the real estate into lots and blocks and several named streets and unnamed alleys. It was approved by the board of public works of the City of San Diego and bears the following certificate:

"City of San Diego,

"County of San Diego,

"State of California, ss.

"The Common Council of the City of San Diego, California, hereby accepts on behalf of the Public, the following named streets, roads, alleys and highways (and also unnamed alleys) shown on this map and plat viz.: Marine Ave., Shore Ave., Bluff St., Vine St., Sea Lane, La Jolla Boulevard, Unnamed alleys.

"April 28th, 1903.

"By order of the Common Council of the City of San Diego, California.

"GEO. D. GOLDMAN,

"City Clerk of the City of San Diego, California, and Ex-officio Clerk of the Common Council of the said City of San Diego."

Blocks four and five form the westerly portion of the subdivided property. On the extreme westerly portion of the map appears what is designated as the Pacific Ocean, with what we assume to be the line of the mean high tide delineated by waving lines drawn generally parallel to and between about twenty and twenty-six feet westerly from the westerly lines of blocks four and five. As the land between the line of the mean high tide and the westerly lines of blocks four and five constitutes the property in controversy here, we will hereafter refer to it as the "Beach" for want of a better name. It bears no name or number on the map, and does not correspond in shape or dimensions to any lot in the subdivision. Golden Vista Street runs in an easterly and westerly direction from the east end of the subdivision to the ocean, its southerly line forming the northerly

boundary of block four. The north line of this block is produced westerly to the ocean forming the southerly line of Golden Vista Street, separating it from the Beach. While Golden Vista Street is shown on the subdivision map of La Jolla Beach we cannot definitely determine whether the ground it occupies is a portion of the property subdivided by Kate Maxwell or whether the southerly street line forms the northerly boundary line of this property. Marine Avenue parallels Golden Vista Street and runs from the easterly end of the subdivision to the westerly lines of blocks four and five, separating these blocks. Sea Lane parallels the other streets and runs from the east end of the subdivision to the Pacific Ocean, its northerly line forming the southerly lines of the southerly tier of blocks in the subdivision. The southerly line of Sea Lane is drawn westerly to the line of the Pacific Ocean. Its north line has its western terminus at the southwest corner of block five leaving nothing on the map separating the westerly end of Sea Lane from the Beach. The southerly tier of blocks in the subdivision is numbered from west to east, five, six, seven and eight. Unnamed alleys, fifteen feet in width, bisect blocks six, seven and eight, running northerly and southerly in block six and easterly and westerly in blocks seven and eight. Block five is bounded, northerly by Marine Avenue, easterly by Shore Avenue, southerly by Sea Lane and westerly by the "Beach". Lots 1 to 8 in block five extend from the Beach to Shore Avenue. Lot 9 extends from the Beach to the westerly line of lot 13 with fifteen feet of the easterly end of its southerly line touching the northerly end of a blind unnamed alley fifteen feet wide extending northerly seventy-five feet from Sea Lane to the southerly line of lot 9. Lots 10, 11 and 12 extend from the Beach to the westerly line of the alley just mentioned. Lots 1 to 12, inclusive, have their greater dimensions from east to west and all, excepting lot 1, are twenty-five feet in width. Lots 13, 14, 15 and 16, in block five, are each 25 by 100 feet in dimension and front on Sea Lane. Lots 9, 10 and 11 in block five have no means of ingress or egress except through the fifteen-foot blind alley unless the Beach in front of them and to Sea Lane is a public street or alley. It was stipulated that

all the lots in blocks four and five had been sold by Kate Maxwell.

The greater portion of La Jolla Beach, shown on the map in question, lies on land elevated above the ocean. This upland ends on the ocean side in an irregular bluff which descends sharply to the sand. The westerly lines of blocks four and five, for at least part of their lengths, run over the sand westerly from the bluffs. It is impossible for us to determine from the evidence how far the block lines are from the bluffs, or from the actual line of mean high tide. Respondent suggests that the west line of blocks four and five is the line of mean high tide and that there is no beach between them. If this should be true, all questions here presented would be moot as appellant could not own tide lands extending seaward from the line of mean high tide. Respondent presented no definite or satisfactory evidence on the question and the trial court evidently concluded that there was a beach of an undetermined width between the line of mean high tide and the westerly lines of blocks four and five. Appellant in her testimony described the Beach as follows: ''The strip of land in question consists of part beach and part sandstone cliff worn away a great deal and very rough, worn away by the water. These cliffs come out at different portions; sometimes very high and sometimes lower; but very awkward to get up and down them until, of course, the city built the steps. . . . The water line has remained practically the same. Of course, it varies very much from season to season. I have reference to the season of the tide and the season of the year. At some seasons of the year the water comes up with a different sort of rush and the whole beach is washed out until there is nothing but rocks there and by 'the whole beach' I have reference to the property in question here.'' Neither counsel paid any attention to the questions of erosions and accretions suggested by this evidence (26 Cal. Jur. 304, and cases cited) and it did not become an issue in the trial court, the sole question considered and decided being, whether or not the Beach was ever dedicated by the owner and accepted by the City of San Diego as a public street or alley. The trial court held such dedication complete and gave judgment for the respondent.

▮ Appellant urges there is no evidence that the owner dedicated the Beach as a public way, and no evidence of an acceptance on behalf of the public of an offer to dedicate it, if one were made. She maintains that the mere delineation on the subdivision map of La Jolla Beach, of the Beach as a blank space without any lot or block number or street name or anything to indicate that it was to be a street or alley, showed no intention on her part to dedicate it to a public use and that the certificate of the common council of San Diego on the map was not an acceptance of the offer to dedicate, if one were made by her.

In Elliott on Streets, section 30, the following general rule is given concerning the interpretation of uncertain offers to dedicate property for public use: "Dedications by maps and plats are sometimes so made as to render it difficult to determine their nature and extent. . . . Naturally the presumption is that one who records a plat, and marks upon it spaces that appear to form no part of any platted lots, dedicated the land represented by the spaces thus excluded to a public use."

The rule in California is summarized in 9 California Jurisprudence, page 15, as follows: "Dedication is the joint effect of an offer by the owner to dedicate land and an acceptance of the offer by the public; and to constitute a valid and complete dedication two things must generally concur, to-wit: An intention by the owner, clearly indicated by his words or acts, to dedicate the land to public use, and an acceptance by the public of the dedication. Whatever the manner in which a dedication is effectuated, the *animus dedicandi* is paramount. It is the soul of the very act of dedication, and must expressly appear, or be fairly inferable from the donor's acts. It has been said that dedication is, in each case, a question of intention. 'The vital principle of the dedication is the intention to dedicate; and whenever this is unequivocally manifested, the dedication, so far as the owner of the soil is concerned, has been made.' "

Section 1 of an act regulating the preparation and recordation of maps of subdivisions in effect at the time the map in question was prepared and recorded provided as follows: "Whenever any city, town, or subdivision of land into lots, or any addition to any city, town, or such subdivision, shall be laid out into lots for the purposes of sale,

the proprietor or proprietors thereof shall cause to be made out an accurate map or plat thereof, particularly setting forth and describing: First—All the parcels of ground within such city, town, addition, or subdivision, reserved for public purposes, by their boundaries, courses, and extent, whether they be intended for avenues, streets, lanes, alleys, courts, commons, or other public uses; and, Second—All lots intended for sale, either by number or letter, and their precise length and width." (Stats. 1893, p. 96.)

Section 3 of the same act as amended provided in part as follows: "The map or plat so made, acknowledged and certified shall be presented to the governing body having control of the streets, roads, alleys, and highways in the territory shown on the map or plat, and said governing body shall indorse thereon which streets, roads, alleys, and highways, offered by said map or plat, they accept on behalf of the public, and thereupon such streets, roads, alleys, and highways, only as have been thus accepted, shall be and become dedicated to public use." (Stats. 1901, p. 288.)

From a study of these sections it would seem that in the preparation of the map in question the only things which the owner should cause to be shown upon it were, (1) streets and alleys, and (2) the lots intended for sale with their designating numbers and dimensions. From this it would follow that there is a strong intimation of an intention on the part of the owner to offer to the public for use as a street or alley an unnumbered or unlettered parcel of ground that did not conform in either shape or dimensions to any of the lots or blocks delineated. The fact that no means of ingress or egress was provided the three lots in block five of the subdivision other than over the "Beach", except through a narow blind alley fifteen feet in width and seventy-five feet in length, would indicate that it was the intention of the owner to dedicate the property for use as a public way. "Maps and plats are frequently admitted in evidence in cases involving dedication. When made by the dedicator they are admissible against him and his grantees. . . . Where a recorded map is relied on as showing an intent to dedicate a street, the situation of the strip of land in connection with the contiguous blocks, the conduct of the parties when the map was made or adopted, the recording of it and acting upon it, and references made to it

in subsequent conveyances, are all to be weighed and considered, and the court has the undoubted right to draw inferences therefrom." (9 Cal. Jur. 71.)

Cases bearing upon the question before us are clearly summarized in 9 California Jurisprudence, page 40, as follows: "The dedication of land for streets by the making or adopting and recording of a map by the owner may take place whether or not the land is so designated on the map. Accordingly, if there is any space corresponding to a street on such a map which does not constitute any part of the platted blocks, it is necessarily dedicated to public use, whether it be lettered as a street or not. (*London & S. F. Bank* v. *City of Oakland*, 90 Fed. 691, 33 C. C. A. 237.) And the delineation of a street on a map by parallel lines running through the blocks, is sufficient for purposes of dedication, though it is not named as a street. This is true even though the space is not a prolongation of any existing street (*San Francisco* v. *Burr*, 108 Cal. 460 [41 Pac. 482]; *Schmitt* v. *San Francisco*, 100 Cal. 302 [34 Pac. 961]), and even though it is so marked as to form a cul de sac. (*City of Los Angeles* v. *McCollum*, 156 Cal. 148 [23 L. R. A. (N. S.) 378, 103 Pac. 914].) And even where a strip of land dividing two tiers of lots in a subdivision is marked with a lot number, a dedication is shown where representations are made to purchasers of lots fronting on it that it is to be used as a street, and it is in fact improved, known and continuously used as a public way, to the knowledge of the owners of the tract. (*City of Venice* v. *Short Line Beach Land Co.*, 180 Cal. 447 [181 Pac. 658].)"

It was stipulated at the trial that Kate Maxwell had sold and conveyed title to all the lots in blocks four and five and in making her deeds had described the property sold by references to the map. In the case of *Larkey* v. *City of Los Angeles*, 70 Cal. App. 635 [233 Pac. 991, 992], where the effect of such deeds was discussed the court said: "The mere filing of the map or record, designating certain portions of the tract as streets and alleys, is simply an offer to dedicate the spaces designated on said map as streets and alleys to the public for highway purposes. (*Elliott* v. *McIntosh*, 41 Cal. App. 763, 766 [183 Pac. 692].) But when the owner, after recording such a map, sells lots designated thereon by reference to said recorded map, he thereby

irrevocably dedicates the streets and alleys shown thereon to the use of the public. (*San Leandro* v. *Le Breton*, 72 Cal. 170 [13 Pac. 405]; *Archer* v. *Salinas City*, 93 Cal. 43 [16 L. R. A. 145, 28 Pac. 839]; *Davidow* v. *Griswold*, 23 Cal. App. 188 [137 Pac. 619]; *Daly City* v. *Holbrook*, 39 Cal. App. 326 [178 Pac. 725]; *Elliott* v. *McIntosh*, 41 Cal. App. 763 [183 Pac. 692]; *Berton* v. *All Persons, etc.*, 176 Cal. 610 [170 Pac. 151].) Therefore, when the original owners of Arlington Heights Tract filed for record the map of this tract and sold said lots in said tract according to said map, the streets and alleys designated thereon became dedicated to the public, and no further action was necessary either upon the part of the public authorities, or upon the public in the use of said streets and alleys in order to constitute the streets and alleys of said tract public highways. As we have already seen, said map was filed for record on May 19, 1887, and three of the lots of said tract abutting on said alleys and lying immediately opposite to and to the north of plaintiff's said Lot 22 were sold by the original owner by the tenth day of December, 1888. Accordingly said alley became irrevocably dedicated as a public alley on December 10, 1888. Therefore, no title to any portion of said alley could be acquired by plaintiff or her predecessors in interest by adverse possession subsequent to said last-named date. As was said by the court in a similar case, 'The property dedicated has become public property, impressed with the use for which it was dedicated, and neither can the public divert it from that use, nor can it be lost by adverse possession. Nor is the effect of such dedication impaired by any delay in the use of the land for which it is set apart. Such failure to make use of the land does not authorize the owner to resume possession. The public can thereafter appropriate the land to the use for which it was dedicated whenever convenience or necessity may suggest.' (*Davidow* v. *Griswold, supra.*)"

■ Appellant maintains that there was no acceptance by the public authorities of the City of San Diego of the offer of dedication, if one were made. We think the certificate of the action of the common council on April 28, 1903, attached to the map of the subdivision, if we consider the Beach either an unnamed alley or an extension of Sea Lane, either of which would be justified from the

map itself, was a sufficient acceptance on behalf of the public of the offer to dedicate. (Sec. 3, Stats. 1901, p. 288.)

■ On July 21, 1924, the common council of the City of San Diego passed an ordinance, whereby it declared that the Beach (describing it by metes and bounds) "be and the same is hereby declared to be an open public street of said city, and is hereby named 'Neptune Place'." Appellant maintains that the passage of this ordinance demonstrates that the property had not previously been accepted as a public way. We cannot put such a construction upon its language. The dedication was complete many years before the ordinance was passed. The property became a public way and the city could not divest itself of its easement except by appropriate proceedings taken in accordance with law. An owner cannot withdraw an offer of dedication when it has been completed by acceptance. The public cannot lose its right in a street or alley through adverse possession nor by delay in using or improving the property. (*Archer* v. *Salinas City,* 93 Cal. 43 [16 L. R. A. 145, 28 Pac. 839] ; *Fitzgerald* v. *Smith,* 94 Cal. App. 480 [271 Pac. 507] ; *Daly City* v. *Holbrook,* 39 Cal. App. 326 [178 Pac. 725].)

■ Kate Maxwell paid taxes upon the property in question from 1917 to 1929. Appellant urges that this is a strong argument against the theory that the property was ever dedicated and accepted as a street. In *City of Venice* v. *Short Line Beach Land Co.,* 180 Cal. 447 [181 Pac. 658], it was held that payment of taxes is not conclusive evidence against the dedication of a street. In this connection it should be observed that Kate Maxwell did not pay taxes upon the property between 1903, when her map was recorded, and 1917. Even though the property were not assessed during this period, this might well indicate the existence of a belief in her mind during these fourteen years that she did not own the property and is a circumstance showing that she intended to dedicate it to public use and that she entertained a belief that it had become free from assessment by reason of the acceptance by the City of San Diego of her offer of dedication.

■ The judgment decreed that "the City of San Diego is the owner, in possession and entitled to possession" of the property in question, when, as a matter of fact, it owned

only an easement over it (sec. 2631, Pol. Code; 13 Cal. Jur. 364], the fee remaining in the abutting owners. Kate Maxwell sold all abutting property years before the institution of this action. Appellant cannot complain because the judgment gave the city more than that to which it was entitled as she was not injured thereby. The owners of the abutting property are not parties to this action and are not here complaining of the judgment.

Judgment affirmed.

Barnard, P. J., and Jennings, J., concurred.