[Civ. No. 18278. Second Dist., Div. Three. Nov. 7, 1951.]

F. J. GASPARD et al., Appellants, v. EDWIN M. LeBARON, INC. (a Corporation) et al., Respondents.

H. E. Bianchi for Appellants.

Watson, Hart & Mieras for Respondents.

SHINN, P. J.—This is an action to quiet title to a strip of land approximately 982 feet in length and 18 feet in width which extends along the top of a ridge that was subdivided into lots prior to 1911. The defendants are a few of a great number of owners of lots in the subdivision. The judgment declares that plaintiffs are not the owners or entitled to exclusive possession of the land, but that the same is, and for many years has been, a public road. Plaintiffs appeal.

The property is described as Lot E, Block 3, of Tract 1146, in the city of Los Angeles. A subdivision map of Tract 1146 was filed in the recorder's office in 1911. It embraced only a part of a large tract that had previously been subdivided according to a recorded map. The lot lines of Tract 1146 conform to those shown on the earlier map. Tract 1146 contains 73 numbered lots. In addition to the numbered lots the map designated certain areas by letter, as Lots C, D and E. While only Lot E is here involved, the purpose and plan of the subdividers were expressed in the delineation of the areas, Lots C and D, as well as Lot E. It will assist in an understanding of the map to visualize Lots E and C as alleys reaching the rear boundaries of all the lots, and Lot D as a road extending around the boundaries of part of the tract that did not face upon existing streets.

At the time Tract 1146 was laid out, San Rafael Avenue was an existing street extending across the southerly boundary of the tract from Ocean View Avenue, the southwest corner of the tract, and northerly along the easterly boundary for a comparatively short distance. It furnished a means of access to the front of 17 lots. Ocean View Avenue was an existing street which formed the westerly boundary of 34 lots. Along the easterly and northerly sides of the tract from the point where San Rafael Avenue ended, to the northerly end of Ocean View Avenue, there were 24 lots which did not face on any street. Lot D, 42 to 52 feet or more in width, was delineated upon the map as the front boundary line of these 24 lots. If it was not intended to be a road, there would have been no means of access to the front lines of 24 of the lots. Lot E, as laid out, was approximately 18 feet wide and 982 feet long. It extended from San Rafael Avenue on the east approximately half way across the subdivision; thence it extended southerly, and had certain east and west laterals. The entire Lot E, with its laterals, formed the rear boundary lines of 26 of the lots. At its southerly terminus there was a

"turn around" circle. Lot C served the same purpose with relation to the remainder of the tract. It was about 18 feet wide and 1639 feet long. It also started in San Rafael Avenue and extended northerly, forming the rear boundary lines of 46 of the lots. At its northerly terminus it also had a "turn around" circle.

The trial court found that the map constituted an offer of dedication of Lot E as a public road. This was an inescapable conclusion. Lots C and E and their turn-around circles were unquestionably intended to be used for traffic to gain access to the rear of the lots, just as Lot D was intended to give access to the front boundary lines of lots bordering thereon. The subdivision map contained an offer of dedication reading as follows: "We hereby certify that we are the owners of or interested in the land included within the subdivision shown on the annexed map and that we are the only persons whose consent is necessary to pass a clear title to said land and we consent to the making of said map and subdivision as shown within the colored border lines and we hereby dedicate for public use all the Avenues shown on this map within the colored border lines. [Signatures.]" On the 6th day of March, 1911, the Board of Supervisors adopted a resolution approving the map and providing, "that all streets, lanes, alleys, roads and other portions of the land shown upon said map, surveyed January ——, 1911, and therein offered for dedication, be and the same are hereby accepted as public highways." It was also found that the offer of dedication had been accepted by long continued use by the public.

 Upon the trial there was introduced in evidence a photostatic copy of the recorded map. It is in black and white and while it does not show in color the border lines to which the certificate of the owners referred it has been stipulated on the appeal that such colored border lines extend along the outer boundaries of all lots facing on San Rafael Avenue and Ocean View Avenue, also along the outer boundary of the parcel marked Lot D, and the outer boundaries of San Rafael and Ocean View Avenues. It therefore appears that the map was an express offer to dedicate Lots C, E and D, as public roads. They could have served no other purpose. They were the parcels, and the only parcels, to which the dedication referred. The fact that they were referred to as avenues and were not so marked is immaterial. (*Gross* v. *City of San Diego,* 125 Cal.App. 238 [13 P.2d 820] ; 9 Cal.Jur., p. 40.)

Upon the evidence which is before us we find that by the proceedings above related the land here in question was dedicated as a public road in 1911.

We might add, without reciting the evidence on the subject, that there also was ample evidence to support the finding that Lot E was offered for dedication as a public road and that it was accepted as such by long continued use by the public.

Defendants are purchasers of lots under conveyances which made reference to the recorded map. Plaintiffs claim title under a tax deed from the State of California issued May 15, 1944, based upon an assessment of Lot E for the year 1927. They contend that their tax deed establishes conclusively that they have a fee title to the land, citing section 3787 of the Political Code, which reads: ''Such deed, duly acknowledged or proved, is (except as against fraud) conclusive evidence of the regularity of all other proceedings, from the assessment of the assessor, inclusive, up to the execution of the deed. Such deed conveys to the state the absolute title to the property described therein, free of all encumbrances, . . .''; and also section 3712 of the Revenue and Taxation Code, which reads as follows: ''The deed conveys title to the purchaser free of all encumbrances of any kind existing before the sale, except: easements constituting servitudes upon or burdens to the property'' etc. Section 3534 of the Revenue and Taxation Code continued in existence an advisory committee on tax-deeded property. The sections which follow authorize the committee to classify and reclassify tax-deeded property, as suitable for public use, suitable to go back to private ownership, or essentially waste land not fit for either public or private use. Only property classified as suitable to go back to private ownership may be sold. Section 3552.22 provides that except as against actual fraud the deed is conclusive evidence of compliance with the article on classification of tax-deeded property and has the same effect as evidence and as a conveyance as a deed to a private purchaser after sale of tax-deeded property. It is the contention of plaintiffs that the property in question was classified as property suitable to be returned to private ownership, else the state would not have sold it. Therefore, it is argued, the deed furnishes conclusive evidence that Lot E was not a public road. At the same time, appellants say: ''We submit that the court was in error in its holding that Lot E in its entirety was a public street. If such finding is upheld the entire sale would be a

nullity so far as plaintiffs are concerned.'' Defendants in their brief do not answer the argument of plaintiffs.

 The underlying and fatal weakness in plaintiffs' claim of title is that the roadway was not subject to assessment for taxes. No authority exists for the assessment and levy of taxes on a public road, or, to state the matter differently, any attempted assessment, levy and sale of land impressed with an easement for use as a public road is entirely void and ineffective to destroy or alter the public right. (*San Leandro* v. *Le Breton,* 72 Cal. 170, 177 [13 P. 405] ; *Lantz* v. *City of Los Angeles,* 185 Cal. 262, 270 [196 P. 481] ; *Burk* v. *City of Santa Cruz,* 163 Cal. 807 [127 P. 154] ; Cal. Const., art. XIII, § 1.) Taxation proceedings initiated without authority to tax cannot be validated by subsequent legislation. (*People* v. *Goldtree,* 44 Cal. 323; *Miller* v. *McKenna,* 23 Cal.2d 774 [147 P.2d 531], and cases cited, p. 782.) Plaintiffs' deed was void and of no effect whatever to validate the unauthorized levy and sale of rights in a public road.

Although there were a great many lot owners in the tract whose interests would be affected, plaintiffs sued only a few of them and the case was at issue only as to those defendants previously mentioned. The city of Los Angeles was not made a defendant. It was evidently the theory of plaintiffs that certain defendants claimed private easements over Lot E. The answering defendants claimed private easements, although they also asserted the public character of the land. The court found against the defendants as to the existence of private easements and these findings are not now questioned. Obviously the city, and all the owners whose lots touch Lot E, are parties interested in the character of the land, since the lot owners and the general public would be adversely affected by any determination that the parcel is not a public road. The judgment declares that plaintiffs are not the owners or entitled to exclusive possession of the land. It does not declare that they have no interest in it. Subsurface rights as between plaintiffs and the owners of lots bordering on Lot E were not in issue nor determined. The judgment that a road exists over Lot E determines only that the taxation proceedings were ineffectual to destroy or impair the public easement for road purposes.

 Inasmuch as the judgment establishes only a public easement over Lot E, which was not subject to being taxed, and since no one owed the tax that was levied, plaintiffs were

not entitled to recover the amount they had paid for their deed and taxes as a condition to the entry of judgment in favor of defendants.

The judgment is affirmed.

Wood (Parker), J., and Vallée, J., concurred.