[Civ. No. 5857. Fourth Dist. Aug. 19, 1958.]

W. R. COREY et al., Appellants, v. THE CITY OF SAN
DIEGO et al., Respondents.

Holliday & Folsom and David S. Folsom for Appellants.

J. F. DuPaul, City Attorney, and Jack G. Whitney, Deputy City Attorney, for Respondents.

McCABE, J. pro tem.*—Plaintiffs bring this action to quiet title to a strip of real property which lies in an area delineated on a Map of Middletown made by J. E. Jackson, described as California Avenue. Defendants are the city of San Diego (hereinafter called City) and Atchison, Topeka and Santa Fe Railway Company (hereinafter referred to as Santa Fe). From a judgment entered in favor of defendants, plaintiffs appeal.

Historically, Middletown was one of four large areas of land within what is now the city of San Diego and in 1874 was undeveloped land. On October 21, 1874, in the case of *Baldwin* v. *Couts*, No. 869, (hereinafter referred to as Baldwin action) a partition decree for Middletown was signed in the 18th Judicial District of the State of California. The Baldwin action was brought to determine the conflicting claims and interests of numerous persons and entities in and to the real property of Middletown. The city of San Diego, the county of San Diego and the predecessors in interests of plaintiffs were among the parties named and appearing in the Baldwin action. Before October 21, 1874, the trial court appointed referees to partition Middletown. The report of the referees, dated October 21, 1874, was filed in the Baldwin case. The referees had a survey and map prepared subdividing Middletown into lots, blocks and streets. The map was referred to and by reference made a part of the decree in the Baldwin action. This map is commonly referred to as

*Assigned by Chairman of Judicial Council.

"J. E. Jackson Map," "J. E. Jackson Partition Map," "J. E. Jackson Partition Map of 1874," "Map of Middletown made by J. E. Jackson." In the Baldwin decree each litigant was given certain property described by lot or lots and block with reference to the J. E. Jackson Map. By the decree the city of San Diego was given specifically described property. The Baldwin decree made no specific mention of the disposition of the title to the land upon which the streets were laid out. In part, the Baldwin decree ordered, adjudged and decreed, "that the said Report and Map of the said Referees and all things therein, be and they are hereby ratified and confirmed, and that the partition therein and herein made and set forth, be firm, binding, effectual and final as to all parties and that the pieces and parcels of land as by said Report and this Decree set off to the Said parties, be theirs, their heirs and assigns forever in Severalty. And this Decree shall ratify and Confirm unto the Said parties the pieces or parcels of land therein and herein set off to them the same as if they had each executed and delivered to each other deeds of release and quitclaim in due form and in accordance with said Report and this Decree." The J. E. Jackson Partition Map was filed in the county clerk's office October 19, 1874 and the Baldwin decree was filed and became part of the official records of the county of San Diego.

On December 21, 1880, one C. P. Noell, one of the litigants in the Baldwin action deeded a certain interest in a strip of land which was part of California Avenue on the J. E. Jackson Map to the California Southern Rail Road Company, which interest has since vested in Santa Fe Railway. By this deed, Noell granted a right of way to "that portion of California Avenue that lies between the front line of each of said lots and blocks and the middle line of said California Avenue as comes within the route of said railroad according to the Map of said railroad Company's railroad . . ."

Plaintiffs, by their complaint to quiet title allege: they and their predecessors in interest have been the owners of certain real property specifically described which lies within the area delineated as California Avenue (now California Street) on the J. E. Jackson Partition Map of 1874; there was no dedication of or acceptance of said street; the street has never been used for a street by anyone; and since the filing of the J. E. Jackson Partition Map in 1874 the street has been used as if free from any dedication. Also, plaintiffs allege defendant

Santa Fe is the owner of a certain specifically described portion of the area delineated on the Jackson Map as California Street. Defendant City answered and denied specifically the allegations of plaintiffs' complaint except it admits the J. E. Jackson Partition Map reflects an area marked California Street. No affirmative defenses were alleged by defendant City. Defendant Santa Fe answered and admitted by failure to deny that it owns the area specifically described in plaintiffs' complaint and the plaintiffs' allegations regarding dedication, nonuse and use inconsistent with dedication and affirmatively pleaded the deed from one Noell.

It appears that the plaintiffs' allegations of ownership in defendant Santa Fe, and the affirmative pleadings of defendant Santa Fe do not limit its interest to a right of way but specifically alleges ownership. However, the Noell deed attached as an exhibit to defendant Santa Fe's answer which was later admitted to evidence, states: ". . . hereby grant unto said California Southern Rail Road Company, its successors and assigns, a right of way . . . over, in and upon the following premises . . ."

The pretrial conference order provided in part: "Issues 1. Whether or not the area in question is now a public street or whether title thereto should be quieted in the plaintiffs and the Railway Company."

On the trial date and during the opening statement of plaintiffs' counsel a title company "Litigation Guarantee," a copy of the Baldwin decree, a copy of the J. E. Jackson Partition Map of 1874 were received and marked as plaintiffs' exhibits. During the plaintiffs' opening statement all parties conceded that plaintiffs, respectively, owned the property contiguous to the parcels of land in litigation. At the close of this opening statement defendant City moved for a directed verdict. During the discussion on this motion there was introduced and marked as defendant Santa Fe's exhibits, a copy of the Noell deed and a map reflecting the location of the railroad in 1880. The trial court stated that apparently defendant City's motion was intended as a motion for judgment comparable to a motion for summary judgment and the evidence would be considered as though in affidavit form. Defendant City concurred in this statement. Then, plaintiffs made an offer to prove the street had not been used as a street, the property had subsequently been sold to third persons, and the property in question had been used as if free from dedication. An objection to the offer of proof was sus-

tained. The trial judge ordered judgment entered in favor of defendant City subject to the easement in defendant Santa Fe.

Plaintiffs appeal from the judgment and "from the whole thereof." Defendant Santa Fe has not filed briefs on this appeal. On this appeal plaintiffs contend (1) the doctrine of res judicata is not applicable, (2) section 748.5, Code of Civil Procedure is applicable, (3) defendant City abandoned any rights to the property under the provisions of section 2620, Political Code, (as it existed between 1874 and 1883) by the City's failure to work or use the property for a five years' period.

Defendant City contends (a) the street was set aside as a public way pursuant to section 764, Code of Civil Procedure, in the Baldwin action; (b) the Baldwin decree was effectual forever on all parties to that action and their successors in interest and is res judicata; (c) section 748.5, Code of Civil Procedure does not change the effect of section 766, Code of Civil Procedure; (d) plaintiffs are barred by laches.

As of the time the decree in the Baldwin action was signed and filed, section 764, Code of Civil Procedure provided in part:

". . . Before making partition or sale, the referees may, whenever it will be for the advantage of those interested, set apart a portion of the property for a way, road, or street, and the portion so set apart shall not be assigned to any of the parties or sold, but shall remain an open and public way, road or street, unless the referees shall set the same apart as a private way, for the use of the parties interested, or some of them, their heirs and assigns, in which case it shall remain such private way. Whenever the referees have laid out on any tract of land roads sufficient, in the judgment of said referees, to accommodate the public and private wants, they shall report that fact to the court, and upon the confirmation of their report all other roads on said tract shall cease to be public highways . . ."

In part, and in 1874, section 766, Code of Civil Procedure, provided as follows:

"The court may confirm, change, modify, or set aside the report, and, if necessary, appoint new referees. Upon the report being confirmed, judgment must be rendered that such partition be effectual forever, which judgment is binding and conclusive.

"1. On all persons named as parties to the action, and their legal representatives, who have at the time any interest in the property divided, or any part thereof, as owners in fee or as tenants for life or for years, or as entitled to the reversion, remainder or the inheritance of property, or any part thereof, after the determination of a particular estate therein, and who by any contingency may be entitled to a beneficial interest in the property, or who have an interest in any undivided share thereof, as tenants for years or for life. . . .

"3. On all other persons claiming from such parties or persons, or either of them."

The J. E. Jackson Map of 1874 delineated a portion of the land to be partitioned as streets and gave these streets specific names. This map was referred to and made a part of the report of the court-appointed referees. This report, which had incorporated the map, was confirmed by the court and made a part of the decree of partition in the Baldwin case. No appeal was taken from the Baldwin decree and it thus became final. Under the provisions of section 766, Code of Civil Procedure, *supra,* the decree became "effectual forever."

The areas so designated and specifically named as streets were for the use and benefit of the general public. (See *Machado v. Title Guarantee & T. Co.,* 15 Cal.2d 180 [99 P.2d 245]; *Loma Vista Inv., Inc.* v. *Roman Catholic Archbishop,* 158 Cal.App.2d 58 [322 P.2d 35].) The creation of the streets was by court decree and not by map only.

Whether or not section 748.5, Code of Civil Procedure, adopted in 1955 is applicable to the facts of this case must now be determined. This section reads as follows:

"Whenever a proposal to dedicate land for public improvement has been heretofore or hereafter made by map only, without any acceptance of the dedication being endorsed thereon, and the land has not been used for the purpose for which the dedication was proposed for a period of 25 years, and the property has been subsequently sold to a third person, after the filing of the map, and used as if free of the dedication, there is a conclusive presumption that the proposed dedication was not accepted, and in a suit to quiet title to such land naming the governmental agency to which the dedication was made by map as defendant, the decree in favor of the plaintiff shall clear the title of the proposed dedication and remove the cloud created by the proposed dedication. (Added Stats. 1955, ch. 563, p. 1066, § 1.)"

No case has been cited to us and we have not found a case interpreting this section. The controlling words of the statute have clear and definite meanings. The word "proposal" has been construed to mean an expression of intention (*Taylor* v. *Miller*, 113 N.C. 340 [18 S.E. 504]) and a willingness to do an act (*Salisbury* v. *Credit Service*, 39 Del. 377 [199 A. 674]) and an offer (Black's Law Dictionary, 3d edition). "To dedicate" means "to appropriate and set apart one's private property to some public use——." (Black's Law Dictionary, 3d edition.) Under these provisions there would have to be an offer to set apart a portion of the property to public use, and it would have to be done "by map only." In our case there was no proposal to dedicate by a person by a map only. The setting apart for public street purposes was accomplished by court decree. We must determine the provisions of section 748.5, *supra*, have no application to the facts of this case.

The general rule of law regarding long delayed use or nonused property dedicated to public use is that the public cannot lose its right by delay in use. (See *Archer* v. *Salinas*.. 93 Cal. 43 [28 P. 839, 16 A.L.R. 145]; *Wheeler* v. *Oakland*, 35 Cal.App. 671 [170 P. 864]; *Gross* v. *San Diego*, 125 Cal. App. 238 [13 P.2d 820]; *Sacramento County* v. *Lauszus*, 70 Cal.App.2d 639 [161 P.2d 460].) In absence of statutory law to the contrary, we believe this same rule of law is applicable to streets created by partition decree where the defendant City was a party to and appeared in and received from the partition action.

Plaintiffs contend that between 1874, the date of the Baldwin decree, and 1883 the date of its repeal, section 2620, Political Code, provided that where a road was not used for a period of five years it ceased to exist. Assuming, without deciding, that such was the effect of this section and that it was not amended prior to 1883, plaintiffs and their predecessors in interest had a cause of action accrue to them as early as 1883. No action was filed by plaintiffs or their predecessors in interest for over 73 years. After 73 years of growth and development of the defendant City, dependent in large part upon the streets and lots laid out by the J. E. Jackson Map of 1874, plaintiffs seek to set aside this map and to declare it a nullity. If a cause of action ever existed in favor of plaintiffs or their predecessors in interest we believe that it is too late to be sustained after a lapse of 73 years.

It is an oft and properly followed rule of equitable

proceedings that where a court of equity acquires jurisdiction it should consider and determine all the rights and claims of the parties relating to the subject matter; and to enter a decree finally determining them to the end that a multiplicity of suits may be avoided. (30 C.J.S., Equity, § 599, and numerous California cases therein cited.) We are satisfied that the trial judge followed this rule to the end that the conflicting claims have been properly and equitably adjudicated.

Although plaintiffs appeal from the judgment and the whole thereof, they do not argue against the judgment entered in favor of defendant Santa Fe. By their complaint plaintiffs affirmatively allege ownership interest in defendant Santa Fe in California Street. This is admitted by defendant City. During the proceeding in the trial court all parties stated to the trial judge that they recognized defendant Santa Fe's easement. On this appeal no point is raised questioning the existence of this easement. This being the state of the record it is clear that plaintiffs concede ownership in defendant Santa Fe. We will not review this portion of the judgment.

We have considered the other contentions of the parties. We believe the equitable disposition of this case disposes of these contentions.

Judgment affirmed.

Griffin, P. J., and Mussell, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied October 15, 1958. Carter, J., was of the opinion that the petition should be granted.